UNION PACIFIC RAILWAY COMPANY V. SAMUEL J. ELLIOTT.

54   299
56   444

FILED MARCH 17, 1898.   No. 7928.

1. **Master and Servant**: NEGLIGENCE OF EMPLOYER: EVIDENCE. Evidence examined, and *held* to sustain the findings of the jury that the negligence of the plaintiff in error was the proximate cause of the injury received by the defendant in error, and that the latter's contributory negligence was not the cause of his injury.

2. **Evidence**: DECLARATIONS. A declaration or admission, to be competent evidence as *res gestæ*, must be made at such time and under such circumstances as to raise the presumption that it is the unpremeditated and spontaneous explanation of the matter about which made.

3. **Railroad Companies**: HIGHWAY-SIGNALS: NEGLIGENCE: INSTRUCTIONS. An instruction of the district court examined and *held* not erroneous.

4. ———: EVIDENCE OF NEGLIGENCE. Irrespective of a statute on the subject, the starting or running of a switch engine in a switch yard, filled with a network of tracks upon which cars are constantly moving, and in which yardmen are at work, without the ringing of a bell or the blowing of a whistle, is evidence of negligence.

5. ———: ACTION FOR PERSONAL INJURIES: FELLOW-SERVANTS. In a suit against a railway company by an employé thereof for damages for an injury sustained through the negligence of a co-employé a defense, that the two employés were fellow-servants, must be presented to and passed upon by the district court either by a pleading, instruction, or in some other manner, or it cannot be considered by this court.

.ERROR from the district court of Hall county. Tried below before KENDALL, J. *Affirmed.*

*W. R. Kelly, E. P. Smith,* and *W. H. Platt,* for plaintiff in error.

*W. A. Prince* and *J. W. Edgerton, contra.*

RAGAN, C.

The track of the Union Pacific Railway Company extends due east and west through the city of Grand Island, in this state, and at that city the railway company has an extensive switch yard filled with a network of tracks. Two of these tracks extend in straight lines east and west through the yards, and the south rail of the north track is about eight feet from the north rail of the south track. The west end of this switch yard is crossed at right angles by Walnut street, and on the west side of this street is a sidewalk. In August, 1892, and for some years prior thereto, Samuel Elliott was an employé of the railway company and located at said city. His duties were to inspect the wheels, brakes, and appliances and oil the journals of cars which came to that station. In this switch yard the railway company kept one or more switch or shifting engines, which were constantly employed, both day and night, in moving cars from one portion of the yard to another. About 5 o'clock in the afternoon of August 5, 1892, Elliott heard, or saw, coming from the west on the north of the two tracks just mentioned a train and at once started towards this train for the purpose of inspecting its wheels, brakes, etc., and oiling its journals when it should reach the yard and stop. The train which Elliott saw on the north track came to a stop about the time its engine reached the west side of Walnut street, and at that time Elliott had reached that locality, and, while standing between the two tracks with his back toward the south one, was struck by a passing switch engine running west on said

track and injured, to recover damages for which he brought this suit in the district court of Hall county against the railway company. He had a verdict and judgment which the railway company has filed a petition in error here to review. Of the numerous arguments urged for a reversal of this judgment we deem it necessary to notice in this opinion only the following:

1. The first contention of the railway company is that the finding of the jury that the proximate cause of Elliott's injury was its negligence is not supported by sufficient evidence. The evidence on behalf of Elliott tended to show that he took his position between the two tracks immediately west of Walnut street for the purpose of performing his duties when the train coming from the west should come to a stop; that the train stopped and he was standing with his face toward the train waiting for the brakeman to uncouple the air hose; that he had been in that position not more than a minute when he was struck by the switch engine running west on the south track, and that no warning of the approach of this shifting engine was given by bell, whistle, or otherwise. It is true that the evidence on behalf of the railway company tended to show that the bell upon the switch engine was ringing all the time it was running west. We cannot say that the jury's finding that the bell on the switch engine was not rung and the whistle not sounded is not supported by sufficient evidence.

2. A second contention of the railway company, and a more serious one, is that the jury's finding that Elliott's injury was not the result of his own negligence is unsupported by sufficient evidence. The evidence shows, we think without conflict, that Elliott was well acquainted with this switch yard, with the manner in which business was transacted there; that he knew that there were two switch engines in the yard which were constantly passing and repassing over the various tracks thereof; that the two tracks mentioned were unobstructed, and a person being upon either track could see trains or engines

on either of the tracks for a considerable distance east or west of him; that he had been at work in this yard for a number of years; that there was ample space between these two tracks for him to oil and inspect the wheels and brakes of the train on the north track and at the same time be safe from contact with a passing engine on the south track; that at the time he was struck by the switch engine he was standing nearer the south track than was necessary, and that he might have stood one or two feet further north and been in a place of safety. In addition to this undisputed evidence the railway company's testimony tended to show that a moment before the switch engine reached Elliott he took a step backward toward the south track, thus bringing himself in line with the cross-beam on the pilot on the approaching switch engine; that before taking this step backwards Elliott neglected to look along the south track toward the east from which the switch engine was approaching, and that had he done so he would have seen the shifting engine and escaped the injury. In other words, the contention of the railway company is that the evidence shows that Elliott, when he first stood with his face to the north waiting for the brakeman on the train, that had just come in, to uncouple the air hose, was in a place of safety, and, without any excuse, he negligently put himself in a place of danger. The testimony on behalf of Elliott on this feature of the case tends to show that as he started toward the west end of the yard to meet the incoming train he crossed the track on which that train was approaching just ahead of it, or just before it reached Walnut street, and at that time he looked east along the south track and saw no engine of any kind on that track; that the train on the north track came to a stop while he was standing on the sidewalk on the west side of Walnut street immediately south of where the train stopped, with his face toward the north, and waiting there for the air hose to be uncoupled, intending then to commence his work of inspection, oiling, etc.; that while he was stand-

ing nearer the south track than was absolutely necessary
he was in that position for only a minute, and had taken
the position south of the north track which he did, in
order to be safe from the incoming train.   He denied tak-
ing a step backwards toward the south track just before
being struck by the engine.   With the evidence in this
condition the jury reached the conclusion that Elliott
was not guilty of negligence which contributed to his
injury.   The question is a very close one, and had we
been trying it, we might have been of a different opinion
from the jury; but we are constrained to say that we
think the jury's finding does not lack support in the
evidence.   Elliott was in the discharge of his duty, and
while he stood nearer the south track than was neces-
sary, before commencing his work, he stood there for a
very short space of time, and if at the moment he thought
of his dangerous proximity to the south track, he had
the right to suppose that no engine would pass on that
track without signaling its approach by bell or whistle
or otherwise.

3. The third argument relates to the ruling of the dis-
trict court in permitting Elliott to testify to a conversa-
tion that occurred between himself and the engineer of
the shifting engine after the accident.   Just a few sec-
onds after the engine struck Elliott the switch engine
came to a stop.   The engineer jumped down from his cab,
went up to Elliott, and, according to the latter's testi-
mony, the following conversation took place between
them (we quote from Elliott's evidence):  "Why, he come
up to me and he says, 'Sam, I don't want you to think I
done that on purpose.'   He said, 'all the time I had after
I saw you was just to throw the engine over.'   He meant
to reverse it.   I made the remark there, I said, 'it looked
a damn sight like it, Ed, you running up there and not
ringing your bell or whistle,' and he said he knew it did,
but 'don't say anything about it.'   That is his words."
It is now insisted that the court erred in permitting this
evidence to go to the jury.   We think the statements of

the engineer of the shifting engine were made so near the time of the happening of the accident and under such circumstances as to bring the statements within the rule making it admissible as *res gestæ*. The rule is that a declaration to be competent as *res gestæ* must be made at such a time and under such circumstances as to raise the presumption that it was an unpremeditated and spontaneous explanation of the matter about which the declaration was made. (*Missouri P. R. Co. v. Baier*, 37 Neb. 235; *Omaha & R. V. R. Co. v. Chollette*, 41 Neb. 578; *City of Friend v. Burleigh*, 53 Neb. 674, and cases there cited.) This conclusion does not contravene the holding of this court in *Gale Sulky Harrow Co. v. Laughlin*, 31 Neb. 103, where it was ruled: "The declarations of an agent made after the transaction to which they relate is fully completed and ended are not competent to be given in evidence as a part of the *res gestæ*." In that case the admission of the agent was made two days after the occurrence of the transaction to which the admission related. (*Robinson v. Superior Rapid Transit R. Co.*, 68 N. W. Rep. [Wis.] 961.)

4. Another argument is that the court erred in giving to the jury the following instruction: "The statutes of this state provide that 'a bell of at least thirty pounds weight or a steam whistle shall be placed on each locomotive engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said railroad shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street, under a penalty of fifty dollars for every neglect, to be paid by the corporation owning the railroad, one-half to go to the informer, and the other half to go to this state, and also be liable for all damages which shall be sustained by any person by reason of such neglect.' And in this case, if you find from the evidence that as the engine approached the crossing on Walnut street a bell was not rung nor a whistle blown as required by the statute, and that the accident complained of was

caused by the failure to ring the bell or blow the whistle, without any fault or negligence on the part of the plaintiff, then you should find for the plaintiff." We think the giving of this instruction was not error. The statute was enacted for the protection of travelers upon highways and streets. Elliott, though not a traveler, was using Walnut street or the sidewalk thereof. But if the instruction was erroneous, we do not think it prejudiced the railway company, as, after all, the effect of the instruction was to tell the jury that if Elliott's injury, without negligence on his part, was caused by the failure of a bell to be rung or a whistle to be blown on the switch engine, then the railway company was. liable. The quoting of the statute by the court in the instruction added nothing whatever to it, as, irrespective of a statute, the starting or running of a switch engine in a switch yard filled with a net-work of tracks, upon which cars and engines are constantly moving and in which yardmen are constantly at work, without the ringing of a bell or the blowing of a whistle, is evidence of negligence.

5. A final argument, which we notice, is that the men in charge of the shifting engine and Elliott were fellow-servants, and that, therefore, the common master, the railway company, is not liable for the injury which Elliott sustained through the negligence of his fellow-servant. Under the facts of this case the correctness of this contention may be conceded. But the railway company did not interpose as a defense to the action that these men were fellow-servants, either by way of answer, instruction, or, so far as the record discloses, in any other manner; in other words, that defense was not presented to the district court, and such a defense cannot be urged for the first time in this court. Whether two servants of the same master are fellow-servants is sometimes a question of law and sometimes a question of fact, sometimes a mixed question of law and fact, to be determined in each case by the particular facts and circumstances of that case; and we do not decide that the defense, to be availa-

ble, must always be pleaded, but such a defense, to be available here, must, either by the pleadings, the instructions, or in some other manner, be presented to and passed upon by the district court. The judgment of the district court is

AFFIRMED.