MOLLIE ENGEL, ADMINISTRATRIX, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED OCTOBER 20, 1923.   No. 22467.

1. **Appeal:** INSTRUCTIONS. The instructions given by the court examined, and found to be proper under the issues and to state the law of the case correctly.

2. **Negligence:** ALLEGATION AND PROOF. The fact that an accident happened raises no presumption that either party thereto was negligent, but the material, specific act of negligence alleged in the petition must be proved to authorize a recovery

3. **Railroads:** CARE REQUIRED. A railroad company is bound, in all cases, to exercise reasonable care to avoid injuring persons who are known to be, or who may be expected to be, upon its tracks or grounds, and if it fails to use such care, it is liable for the damages resulting proximately from such failure.

4. **Master and Servant:** CARE REQUIRED. "An employee is not bound to exercise care to discover extraordinary dangers arising from the negligence of the employer or of those for whose conduct the employer is responsible, but may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger are so obvious that an ordinarily careful person under the circumstances would observe and appreciate them." *Chesapeake & O. R. Co. v. DeAtley*, 241 U. S. 310.

5. ———: ———. The employee has the right to assume that those operating engines or trains will use due care and caution for his safety, and when a railroad company knows that its employees are engaged in work on or about its tracks, it is its duty to maintain a careful lookout for such employees to prevent injuring them.

6. ———: ———. While it is the duty of employees to watch for dangers and to protect themselves against them, this does not relieve the railroad company and its employees of the duty of using care and caution for the safety of its employees.

7. ———: DEATH OF SERVANT: CONTRIBUTORY NEGLIGENCE: PRESUMPTION. Where there is no eyewitness, no direct evidence of the accident causing the injury, the facts and circumstances may be proved by circumstantial evidence, and the presumption is raised by the instinct of self-preservation on behalf of the deceased that he was not guilty of contributory negligence, but was in the exercise of due care and caution for his own safety, unless the contrary is shown.

8. ——: QUESTIONS FOR JURY. The questions of negligence on the part of deceased and on the part of defendant and its employees were properly submitted by the court to the jury for their determination upon the consideration of all the evidence.

9. ——: VERDICT SUSTAINED. Under the pleadings and evidence, the verdict of the jury in this case was warranted and justified.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Byron Clark, 'esse L. Root, Max V. Beghtol* and *J. W. Weingarten,* for appellant.

*McCarty & Hager,* contra.

Heard before MORRISSEY, C. J., ALDRICH and DAY, JJ., COLBY and REDICK, District Judges.

COLBY, District Judge.

This is an action brought in the district court for Lancaster county, prosecuted under the federal employers' liability act by the legal representative of Adam Engel, deceased, who in his lifetime was a section foreman in appellant's employ in the city of Lincoln, to recover damages because of the alleged negligent fatal injury of the said Adam Engel by appellant.

The amended petition, after alleging matters of jurisdiction, besides pleading the violation of an ordinance of the city of Lincoln restricting the speed of locomotives or trains to four miles an hour within the city, pleads as other negligent acts by the appellant causing said injury, in substance, as follows: (1) In not keeping a look-out on the advancing end of the locomotive which was running backward; (2) in not seeing said deceased and warning him of his danger; (3) in not having the locomotive under control at the time it struck deceased; (4) in not stopping the locomotive before striking deceased; (5) in operating the locomotive backward without a look-out on the rear or advancing end; (6) in operating the locomotive at a speed in excess of 10 miles an hour; (7) in not sounding a whistle

Engel v. Chicago, B. & Q. R. Co.

or ringing a bell as it moved backward at the time and immediately prior to the time of the accident; (8) in not warning the deceased before the locomotive struck him and in time to permit him to have escaped injury; (9) in not stopping the locomotive after appellant and its agents and employees in the locomotive, in charge thereof, saw said deceased and realized his danger.

Appellant's answer admitted its corporate capacity and the relation between itself and Adam Engel at and before the time of his death; admitted that appellant is a railroad corporation engaged in interstate transportation by rail of freight and passengers; that said Engel, on the day of the accident which resulted in his death, was a foreman of a gang of men engaged in maintaining and repairing appellant's roadbed and side-tracks in the city of Lincoln used in its business as an interstate carrier by rail, and that such work was necessary to maintain its tracks in proper condition; and also admitted the collision and the injury, and that the locomotive was being driven backward at the time of the accident; admitted Engel's age, and that there survived him a widow, daughter, and a son, but denied all other allegations of the petition.

The appellant further alleged that the ordinance pleaded in plaintiff's petition was void; that at the time of the accident the day was clear and that there were no obstructions to Engel's view of the approaching locomotive, which he knew was moving backward and was liable to pass over the track at any time. The answer also alleged that the whistle had been sounded and the bell was ringing, and that Engel, in going on the tracks under the circumstances, assumed the risk of his injuries, and that his death grew out of such assumption and his own carelessness and negligence.

In reply it was alleged, among other things, that there were many cars, locomotives and trains moving about the yard in the vicinity of the accident and men were constantly at work in that neighborhood.

The case was tried and submitted to a jury, who returned a verdict in appellee's favor in the sum of $10,000; motion

for new trial was overruled and the case appealed to this court; appellant setting forth 49 separate assignments of error upon which a reversal is asked, also stating 15 propositions of law relied upon for the reversal of the case.

It is plain that under the issues the burden of proof rested upon plaintiff to show by a preponderance of the evidence one or more of the material specific acts of negligence of the defendant alleged in the petition, and that such act or acts caused the fatal injury to Adam Engel, and, unless it appears that such act or acts were proved, the verdict of the jury cannot be sustained.

There seems to be a duplication of some of the specific acts of negligence alleged, but this fact is not material. It appears from the record that there was very little conflict in the evidence on the trial, such conflict being mainly in relation to whether the bell on the advancing locomotive was ringing from the time it passed the Ravenna crossing to the time of the accident, or not. The employees on the engine testified in the affirmative, but witnesses for the plaintiff testified that they did not hear the ringing of the bell. It also appears that the whistle was not blown after the locomotive entered the yards passing through the gate at the Ravenna crossing.

The evidence shows that the deceased, who was a section foreman and foreman of a gang of some 16 to 18 men, was engaged on the day of the injury in shoveling snow and clearing the depot and tracks, and that on such day the weather was blustery and stormy, the ground covered with snow, and the tracks wet. The accident occurred in the extensive Burlington yards at Lincoln, in that part westward from the passenger station. It appears that deceased was fatally injured by the engine and tender of train No. 18, and that at or about that time the engine of train No. 39, coming from the roundhouse, was moving forward toward the deceased, with bell ringing, and that the engine and tender of train No. 18 had come from its regular run from Hastings to Lincoln and was going backward to the roundhouse to lay up until its next run.

The defendant and its employees on the locomotive knew that deceased and the gang of men under him were constantly crossing and recrossing the tracks at the place where the accident occurred, that locomotives were traveling backward and forward on the many tracks in the yards and bells were ringing on the different engines that were at times passing to and fro, and that there were 50 to 60 engines backing over the track every eight hours. It is unquestioned that the yard in which the deceased was working with his gang of men was a place of danger at nearly all times, and that this must have been known to deceased as well as to the defendant railroad company and its employees on the engine of train No. 18, and it would seem that the care, caution and prudence which a reasonable person, under the circumstances, should exercise were required both of employer and employee at all times to insure the safety of those employed in labors about the yards.

It further appears from the record that the Ravenna crossing, or the Ravenna-Billings crossing, as it is sometimes called, was about three blocks, or a distance of 400 or 500 feet from the place of the accident; that train No. 18 was late 10 or 15 minutes; and that there was a way for No. 18's locomotive to have gone to the roundhouse not over the west-bound track where the accident occurred, and that such way was generally or sometimes used when the trains were late.

The first error assigned by appellant for reversal of the judgment of the lower court is that such court overruled appellant's motion to strike from the amended petition reference to the ordinance of the city of Lincoln forbidding the operation of trains, engines, cars or trucks within the corporate limits of the city of Lincoln at a greater rate of speed than 4 miles an hour, and that this alleged error also includes the rulings of the court on the same subject in the introduction of evidence. While it is true that the district court overruled the motion to strike from the amended petition the ordinance of the city of Lincoln referred to, and also true that evidence of such ordinance

was introduced, over objections, on the trial of the case, yet the district court corrected these errors, if they were errors, by giving the jury instruction No. 11, as follows:

"You are instructed that an ordinance of the city of Lincoln, respecting the regulation of speed of trains in said city, was received in evidence, and has been since withdrawn, and you will treat that item of evidence as though it had not been read in your hearing."

This ordinance was introduced the last thing before the adjournment of court in the evening, and it does not appear that the same was even read to the jury, but it does appear that the next morning such ordinance was withdrawn from the evidence and that on the submission of the case the court gave the instruction quoted. This will surely relieve the case of the burden of any prejudicial errors by reason of the ordinance having been introduced or the overruling of the motion to strike the reference thereto from the amended petition.

The next assignments of error include objections to the admission of evidence on the trial, and more especially to the rulings of the court upon appellant's objections to a large number of interrogatories and the answers thereto, chief among which might be mentioned the inquiries as to the habitual conduct of the deceased regarding the care used by him toward his men and in the management of his business as an employee of the railroad company.

Plaintiff's amended petition avers that deceased had been in the employ of defendant for 22 years, and was skilled, competent and efficient in the upkeep, repair and maintenance of railroad rights of way and tracks and in the working, controlling and handling of men under him; that he was a man of good habits, strong, robust and in good health, sober and industrious, a constant and steady worker.

Defendant's answer admits its employment of deceased, and that deceased was a skilled, competent and efficient workman, of good habits. While the interrogatories and testimony brought out thereby do not show the conduct of deceased at the time of the accident, or what care and cau-

tion were actually exercised by him at said time, yet they do have a bearing upon the known or uncontroverted facts in the case and might properly be considered by the jury in connection with all the other facts and circumstances shown by the evidence. As the exact facts of the fatal injury were not known to any witness and the accident was not seen, the only way for the jury to arrive at the real cause of the accident was by a consideration of all the known facts and circumstances surrounding the case and the conditions which might have existed at the time of and immediately prior thereto. We can see no prejudicial or reversible error in the rulings of the court regarding such previous conduct and character of the deceased.

The other objections by appellant's counsel to the introduction of evidence and the rulings of the court thereon seem to be of a general nature and the rulings not such as to prejudice defendant's case. We discover no serious prejudicial error sufficient to warrant the reversal of the case in these rulings, and none has been pointed out or called to our attention by appellant's counsel.

Counsel for appellant also urge as grounds for reversal the refusal by the court to give the paragraphs of instructions 1 to 14 requested by defendant, and the giving of instructions 1 to 14 on the court's own motion. Reserving the questions involved in instruction No. 1 requested by defendant, which will be considered later, we find no error in the refusal to give the other instructions, and, in fact, no specific errors are urged by appellant or brought to our attention.

As to the instructions given by the court on its own motion, upon diligent examination and consideration we are convinced that the district court recognized and carefully guarded the rights and interests of both parties and stated to the jury clearly the law applicable to the issues involved.

In the first three instructions the court correctly states the issues, giving the material substance of the pleadings, and these instructions are not subject to the objections

made, nor are the authorities cited by defendant's counsel, when rightly understood, applicable to them.

The court in instruction No. 4 fairly advised the jury of the law as to the burden of proof, negligence, and proximate cause, as well as the amount of damages.

In instruction No. 5 the court instructed the jury regarding the duties of the engineer and fireman in watching for objects on the track, so far as compatible with properly operating the engine, and of the warnings required to be given employees such as an ordinarily prudent person would do under existing circumstances.

In instruction No. 6 the court correctly defined negligence, and in instruction No. 7 the liability of a person guilty of negligence or of the want of the exercise of due care in certain cases is explained and limited. In the latter part of such instruction the court uses this language: "The law presumes that the deceased was exercising ordinary care at the time of his injury, with a view to his own safety. However, there is no liability on the part of the defendant company without proof of its negligence which was the proximate cause of the death in question. The fact that an accident happened raises no presumption that either party thereto was negligent, but the specific act of negligence alleged in the petition must be proved by the preponderance of the evidence." It will readily be seen that this instruction meets and does away with many of the objections made by defendant's counsel and correctly includes the principles of law in regard to such matters strenuously contended for by them.

In instructions 8 and 9 the district court advised the jury of the dangers necessarily incident to railroad tracks and yards, and of the duties devolving upon a person, employee or otherwise, in using due caution to avoid such dangers and the injuries which might result therefrom. Instruction No. 9 correctly and without ambiguity gives the law governing this case in regard to the reasonable care required to be used by employers as follows: "You are instructed that a railroad company is bound in all cases to exercise reason-

able care to avoid injuring all persons who are known to be, or who may be expected to be, upon its tracks or grounds; and if you find from the evidence that the deceased might have reasonably been expected to be on the main track of the defendant in front of the engine that ran over him, then it was the duty of the defendant to use reasonable care to avoid injuring deceased, and if it failed to use such reasonable care, it is liable for whatever damages resulted to plaintiff as the proximate result of such failure." This law is based upon humane principles and a proper regard for human life and is supported by the best legal authorities.

Under the federal employers' liability act, while the employee assumes the risks of his employment, he does not, under all circumstances, assume risks occurring by reason of the negligence of the employer, nor of the employer's employees or agents. *Erie R. Co. v. Purucker*, 244 U. S. 320; *Kalashian v. Hines*, 171 Wis. 429; *Armbrecht v. Delaware, L. & W. R. Co.*, 90 N. J. Law, 529; *Grybowski v. Erie R. Co.*, 88 N. J. Law, 1; *Trinity & B. V. R. Co. v. Elgin*, 56 Tex. Civ. App. 573.

Where a railroad company knows its employees are engaged in work on or about its tracks, it is its duty to maintain a careful lookout for such employees to prevent injuring them. *Chicago & E. R. Co. v. Mitchell*, 184 Ind. 588; *Grybowski v. Erie R. Co., supra; Kommerstad v. Great N. R. Co.*, 128 Minn. 505.

The other instructions given on the court's own motion are not erroneous and were proper to be given to the jury to enable them to fully understand the facts and apply to the evidence the principles of law applicable to the issues.

We now come to the most serious assignment of errors, and upon which counsel for appellant seem to rely mainly for a reversal of this case. At the close of the evidence, and also in instruction No. 1 requested on submission of the case, appellant moved the court to instruct the jury to return a verdict in appellant's favor for the reason that the evidence was insufficient to establish the charges of negli-

gence in the petition or to establish a liability in favor of
appellee and against appellant. The question, in brief, is:.
Was there sufficient evidence, when all the facts and cir--
cumstances were taken into consideration, to authorize the:
submission of the case to the jury and to warrant the ver-
dict?

Witness Adams testified that shortly after the passage:
of train No. 18's engine he heard a moaning sound and.
found Adam Engel lying on the outside of the west track
with his left arm cut off at the shoulder and his left leg:
run over twice and cut off. This witness is corroborated
by two others. It appears, however, that no human eye saw
the accident which resulted in the death of Adam Engel..
Were there circumstances, facts and conditions shown by
the evidence sufficient for the jury to decide, under the in--
structions given, the questions of negligence made by the
pleadings?

There is no contention but that the burden of proving
the material allegations, or some of them, of negligence on
the part of the defendant company, or its employees, was
upon the plaintiff, but it is not required that these be proved
by direct and positive evidence. They may be legally proved
by facts and circumstances from which such negligence
will be legitimately inferred. Circumstantial evidence,
when full and complete, is oftentimes just as conclusive and.
convincing as direct evidence. In very many of the most im-
portant cases tried in our courts the evidence is largely or
wholly circumstantial. Take it in murder cases, where the
life and liberty of the defendant on trial are at stake, and
where all the presumptions are in his favor, the courts uni-
formly hold that the circumstances proving or tending to
prove the material elements of the crime charged and show--
ing the guilt of defendant should all go to and be considered
by the jury in arriving at their verdict, and that, because
no human eye saw the fatal shot fired or the blow struck,
yet the circumstances proved surrounding the case are
often of such a nature that the jury can legally and prop--
erly infer the defendant's guilt. If it is proper in cases:

involving the dearest of all rights for the jury to give such consideration to circumstantial evidence it certainly is admissible in a case involving only questions of negligence and civil liability and not those of criminal intent and moral turpitude.

There are nine allegations of negligence pleaded in the amended petition as causing the fatal injury, and from an examination of the record it appears that the greater number of these are uncontroverted. Of course, it was a question for the jury whether the acts of defendant charged and complained of really constituted negligence and caused the injury under all the facts and circumstances shown by the evidence.

Among the first acts of negligence complained of is that the defendant did not have a look-out on the advancing end of the locomotive with its tender which was being backed into the yards. This fact is undisputed and is admitted by both parties—there was no look-out on the tender or on the advancing end of the locomotive which struck plaintiff and caused his fatal injuries.

The second is the charge of negligence in not seeing the deceased and warning him of his danger. This fact is also uncontroverted, as engineer Wilson and fireman Weber on No. 18's engine both testified that they could not see a man 100 feet ahead of the tender, and that they did not see the deceased and hence did not warn him, and, in fact, could not see him or the place where the accident occurred by reason of the curvature in the track over which the locomotive was passing; that it was impossible for either of them, from where they were located and riding in the engine cab, to see the place of the accident by looking out on either side of or over the engine and tender.

It is also charged that the employees of defendant did not stop the locomotive before striking deceased. This is also admitted, as the testimony shows that the defendant, or its employees, had no knowledge of the running down or striking of deceased at the time.

It is charged that defendant and its employees were also

negligent in not sounding the whistle and ringing the bell as the engine and tender moved backward at the time of and immediately prior to the accident. The evidence shows that the whistle was not sounded after passing into the yards through the gate, which was about three blocks distant from the point of the accident. The employees testified that the bell rang automatically, while witnesses for plaintiff testified that they did not hear the ringing of the bell, although only about 50 feet distant from the place of the accident.

It is also charged that the defendant and its employees were negligent in not warning deceased before the locomotive or tender struck him in time to have permitted him to escape injury. It is undisputed that no warning whatever was given deceased before he was struck, nor did defendant, or its employees, furnish him any opportunity to escape the impending injury.

It is also charged that defendant was negligent in not stopping the locomotive and tender after appellant and its employees on the locomotive saw said deceased and realized his danger. There is no evidence that the defendant or its employees attempted to stop the locomotive or that they saw deceased prior to his fatal injury.

It is contended by appellant's counsel that because the deceased understood and appreciated the dangers which arose from his employment, or by the reasonable use of his senses, having in view his age, intelligence, and years of experience, ought to have understood and appreciated such dangers, and voluntarily undertook to work under those conditions and expose himself to those dangers, he cannot recover against his employer for the resulting injuries.

This statement of the law is fairly correct, providing the injuries resulting to the plaintiff came from the dangers assumed by him, and were incident to and a part of his employment, and did not come or result from the negligence of defendant or its employees. It cannot be successfully contended that deceased assumed by his employment any injuries which were liable to result from the negligence

and carelessness of defendant or its employees. The employee's assumption of risk only applies to the dangers incident to and arising out of the conditions of the machinery, premises and his employment. It was the duty of deceased to watch for dangers and protect himself against them, if possible, and to exercise great vigilance in looking out for approaching engines and trains, but it was also the duty of the railroad company and its employees to use due care and caution for the safety of the employees; and where a railroad company knows that its employees are engaged in work on or about its tracks, it is its plain duty to maintain a careful look-out for such employees to prevent injuring them. Because the deceased had been employed by the railroad company for 22 years, a part of which time as foreman of a gang of men, and was aware of the many dangers incident to such employment, these facts did not authorize the railroad company to operate its engine and tender negligently and without regard to his safety or without using the ordinary care which an individual is obliged to use, under like circumstances, for the protection of his employees. The deceased had a right to presume that those operating the locomotive would use proper care and caution for his safety, that they would maintain a careful look-out to prevent injuring him, and that they would take the reasonable, ordinary and usual precautions necessary to protect him in his employment. It cannot be claimed that under the federal employers liability act an employee assumes the risks of the negligence of the employer or of the employer's employees or agents, at least until knowledge of the particular negligence which caused or was liable to cause the injury is brought to his attention.

Now the matter of the care and caution to be used by defendant and its employees upon the locomotive, under the circumstances of this case, was a question of fact to be submitted to the jury for their consideration, and not necessarily a question of law. In some cases it might be that the automatic ringing of the bell would not be sufficient and

that ordinary care would require the sounding of the whistle, and that in this case, where they were rounding a curve in the tracks and could not see the place where the accident occurred, ordinary care required the stationing of a lookout on the advancing end of the engine or of the tender, and that where it was known to defendant that deceased was working on the very track which the locomotive was obliged to pass over, a prudent watch should be provided, and that the engine should be kept in readiness to stop, when it was seen that there was danger of running down the deceased, and that timely warning should be given and other necessary precautions taken for the due protection of the faithful and efficient employee who had devoted 22 years of his life to the service of defendant. These matters were all proper to be considered by the jury under all the facts and circumstances shown by the evidence, and it was their duty, under the instructions of the court, to give the deceased the benefit of the presumptions arising in his favor, as well as to give defendant the benefit of those arising in its favor, and to decide, under all the circumstances and facts disclosed, whether the fatal accident was caused by the negligence or want of proper care on the part of defendant, as charged in plaintiff's petition.

Under some circumstances and in many cases it has been held by the courts that negligence is a matter of law. This court in *Union P. R. Co. v. Elliott,* 54 Neb. 299, announced in the fourth paragraph of the syllabus: "Irrespective of a statute on the subject, the starting or running of a switch-engine in a switch-yard filled with a network of tracks, upon which cars are constantly moving and in which yard men are at work, without the ringing of a bell or the blowing of a whistle, is evidence of negligence." And the commissioner, in the opinion of the court, comments as follows: "Elliott was in the discharge of his duty, and while he stood nearer the south track than was necessary before commencing his work, he stood there for a very short space of time, and if at the moment he thought of his dangerous proximity to the south track, he had the right to suppose

that no engine would pass on that track without signalling its approach by bell or whistle or otherwise."

In *Wise v. Delaware, L. & W. R. Co.,* 81 N. J. Law, 397, the court, in the first paragraph of the syllabus, uses this language: "Evidence that the defendant's locomotive engine was not running on schedule time, was being driven backwards, and omitted to give the statutory signal of its approach to the crossing, clearly made out a *prima facie* case of negligence on the part of the defendant."

Again, in *Huxoll v. Union P. R. Co.,* 99 Neb. 170, 180, this court makes the following statement: "The court is committed to the doctrine of the *Glantz* case (*Glantz v. Chicago, B. & Q. R. Co.,* 90 Neb. 606) that to run a high-tank road engine backwards through railroad yards without a lookout, when to have one is the usual custom in such yards, is a negligent act. This is a humane doctrine and we adhere to it."

In *Southern R. Co. v. Daves,* 108 Va. 378, the court say: "Whether it is negligence or not for the servants of a railroad company to run an engine backwards or push cars ahead of an engine without stationing some one on the tender, or foremost car, to signal its approach to a person who may be on the track, is a question which is controlled by the circumstances under which the engine or train is operated. Under some circumstances, the act has been held to be negligence as a matter of law; but in most cases it has been held to be a question of fact to be submitted to the jury."

From a careful examination of the many adjudicated cases, we conclude that the question of negligence, while sometimes a matter of law, is generally a question of fact to be submitted to the jury for their determination from a consideration of all the circumstances, conditions and facts shown by the evidence as surrounding the case.

The testimony of the employees on No. 18's locomotive is that the engine, in passing to its roundhouse, needed no special care, and that all the employees had to do was to watch; that the curve in the tracks made it impossible for

the engineer and fireman in the cab to see the location of the accident; that the cab window on the side of the fireman was closed, so that he did not and could not look out on that side at all; that no one was on the tender or advancing end of the engine; that no one was on the track in front of the locomotive to give warning of its approach, and, in fact, that these two employees did not put themselves in any position to watch intelligently and see what might be in front, or to enable them to look over the tracks on which the advancing engine and tender were going. Witnesses testified that the engineer and fireman could not have seen a man on the track 100 feet ahead of the engine by looking over the engine or tender or alongside the tender. The employees on train No. 39's engine testified that their duties were in keeping watch ahead with reference to the track on which they were moving, and that they were instructed that if they saw any persons coming on the track to notify or warn them. From the evidence, the engine and tender of No. 18 were running blindly in the vicinity of and on the tracks where deceased and other employees were known to be working, and the employees riding on the engine saw nothing and were so situated that they could see nothing; that they did not pretend to nor seek to give any warning whatever of the approach of the locomotive and tender, which the evidence shows was under control, with sand in the boxes, and could have been easily stopped within a distance of from 25 to 30 feet; that the locomotive was running light, which means that it would make but very little noise; that no whistle was blown within three blocks after entering the yards, and that it was a very grave question whether the automatic bell was ringing. All these facts, under the law, should go, and did go, to the jury for their consideration in solving the question of negligence under the issues.

Under the law, each particular case is to be determined by the circumstances and facts of such case. In some instances the sounding of a whistle might be required; in others a man on the advancing end of the engine or tender

or a man walking on the track in front or other precaution-ary measures are necessary to insure ordinary safety. *Topore v. Boston & M. Railroad,* 79 N. H. 169; *Moore v. Minneapolis & St. L. R. Co.,* 123 Minn. 191; *Huxoll v. Union P. R. Co.,* 99 Neb. 170; *Southern R. Co. v. Daves,* 108 Va. 378; *Louisville & N. R. Co. v. Potts,* 92 Ky. 30; *Boyd v. Southern R. Co.,* 115 Va. 11; *Wise v. Delaware, L. & W. R. Co.,* 81 N. J. Law, 397.

The jury might well have found from a consideration of all the facts and circumstances shown by the evidence that the automatic bell did not ring. Some of the workmen testified that they did not hear it, and the jury would have the right to consider the experience of deceased and his instinct of self-preservation in determining whether the automatic bell rang or not, as the evidence shows that his sight and hearing were normal. *Sullivan v. New York, N. H. & H. R. Co.,* 73 Conn. 203; *Western Travelers Accident Ass'n v. Munson,* 73 Neb. 858; *Philadelphia & Reading Coal & Iron Co. v. Oravage,* 229 Fed. 383.

Again, it appears from the evidence that when the trains were late there was another track by which the locomotive and tender were accustomed to pass to the roundhouse, and it is shown that the Ravenna train was late and the engine of train No. 18 did not arrive at the gate of the yards till 10 or 15 minutes after time. Under these circumstances, did not the deceased have a right to presume that No. 18's engine had taken the other track and would not pass over the track upon and around which he and his gang of men were at work? And to this might properly be added the reasonable presumption that, if No. 18's locomotive should pass late and out of time down the track where he was at work, ordinary care and caution would be used for his protection. All of these matters were proper for the consideration of the jury in determining the question of fact whether the fatal injury was caused by the negligence of the defendant and its employees or by the negligence of the deceased.

While there are certain presumptions of law as to negli-

gence recognized in certain cases, as we have seen, yet under the facts disclosed by the record in this case the negligence of the defendant was clearly a question of fact and properly submitted to the jury for their consideration. *Kalashian v. Hines*, 171 Wis. 429; *Glunt v. Pennsylvania R. Co.*, 249 Pa. St. 522; *Indiana I. & I. R. Co. v. Otstot*, 212 Ill. 429; *McLeod v. Chicago & N. W. R. Co.*, 104 Ia. 139.

When all these matters shown by the evidence were submitted to and were under consideration by the jury, and there being no eye-witness to the accident, it would seem to be proper for the jury to consider the testimony that the deceased was habitually careful in his work for the protection of himself and the men under him, and they certainly could not draw the inference that he was not in the exercise of due care when he was run down by the offending engine. *Casey v. Chicago R. Co.*, 269 Ill. 386; *Lyman v. Boston & M. Railroad*, 66 N. H. 200; *Missouri P. R. Co. v. Moffatt*, 60 Kan. 113; *Chicago & A. R. Co. v. Wilson*, 225 Ill. 50.

Some of the authorities hold that an employee injured while engaged in his duties, under such circumstances as are disclosed in this record, is not, as a matter of law, guilty of contributory negligence, but this is a question of fact for the jury. *Union P. R. Co. v. Elliott*, 54 Neb. 299; *Mitchell v. Toledo, St. L. & W. R. Co.*, 197 Fed. 528; *Koski v. Chicago, M. & St. P. R. Co.*, 116 Minn. 137; *Pennsylvania Co. v. O'Shaughnessy*, 122 Ind. 588; *Louisville & N. R. Co. v. Potts*, 92 Ky. 30.

This legal proposition, however, need not be considered exhaustively nor settled in the present case, because the evidence would have sustained a verdict larger than was returned by the jury, and it must be presumed that in determining the amount of the verdict the jury compared the negligence of deceased, if any were shown, and deducted the amount thereof from the full damages, and that the verdict represented the balance. No instructions were asked by defendant on the subject of contributory or comparative negligence. *Bombolis v. Minneapolis & St. L. R.*

*Co.*, 128 Minn. 112, affirmed in *Minneapolis & St. L. R. Co. v. Bombolis*, 241 U. S. 211; *Fitzpatrick v. Hines*, 105 Neb. 134.

Under the federal employers' liability act contributory negligence does not bar a recovery unless it is the sole cause of the injury. If there is any negligence of the defendant contributing as a proximate cause, plaintiff is entitled to a verdict representing defendant's proportionate share in such proximate cause or causes. 8 Fed. St. Ann. 1339, sec. 3; *Fitzpatrick v. Hines, supra.*

As we have seen, no human eye saw the accident in question, and the facts and circumstances thereof could be proved only by circumstantial evidence, and not by direct evidence. This condition of the case introduces another legal proposition which has been recognized specially by this court and generally by other adjudicated cases, which is, that where there is no direct evidence, that is, no eyewitness to the accident, the instinct of self-preservation in human nature raises the presumption that deceased was not guilty of contributory negligence but was in the exercise of due care and caution for his own safety. *Albrecht v. Morris*, 91 Neb. 442; *Chase v. Chicago, B. & Q. R. Co.*, 91 Neb. 81; *Sorensen v. Selden-Breck Construction Co.*, 98 Neb. 689; *Nilson v. Chicago, B. & Q. R. Co.*, 84 Neb. 595; *Northern P. R. Co. v. Freeman*, 83 Fed. 82; *Gordon v. Illinois C. R. Co.*, 168 Wis. 244; *Chicago & A. R. Co. v. Wilson*, 225 Ill. 50; *Tyrrell v. Boston & M. Railroad*, 77 N. H. 320; *Chicago, B. & Q. R. Co. v. Gunderson*, 174 Ill. 495; *Illinois C. R. Co. v. Nowicki*, 148 Ill. 29; *Missouri P. R. Co. v. Moffatt*, 60 Kan. 113; *Golinvaux v. Burlington, C. R. & N. R. Co.*, 125 Ia. 652; *Baltimore & P. R. Co. v. Landrigan*, 191 U. S. 461.

Counsel for appellant quote excerpts from the opinion in *Tsiampras v. Union P. R. Co.*, 104 Neb. 205, but these very excerpts show a different state of facts from those existing in the instant case. The learned judge, in his opinion, says: "We find no negligence upon the part of the trainmen in failing to give the usual warnings, in fail-

ing to discover the dangerous condition of decedent, or in failing to do what they might have done after discovering him in a place of danger."

In the case at bar the negligence and in fact many acts of negligence of defendant and its employees are unquestioned. No warnings were given, if we except the automatic ringing of the bell, which fact is in dispute, no whistle was blown after entering the yards, no one was on watch, and no effort was made to discover the dangerous situation of decedent or to protect him in any way by using even the common, ordinary care and caution which a reasonably prudent man would use to protect his employees under like circumstances.

From a careful examination of the whole record, we are of the opinion that a fair trial was had, that the rulings of the district court were without prejudicial error, that the instructions correctly stated the law, and the findings of the jury were fairly justified and warranted by the evidence. The proceedings and judgment of the district court are

AFFIRMED.