HAZEL M. ANDERSON, ADMINISTRATRIX OF THE ESTATE OF
WILLIAM M. ANDERSON, DECEASED, APPELLANT, V. ROY
NINCEHELSER, APPELLEE.
43 N. W. 2d 182

Filed June 23, 1950.   No. 32790.

*Lloyd E. Peterson* and *Betty Peterson Sharp,* for appellant.

*Armstrong & McKnight,* and *Dwight Griffiths,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff, administratrix of the estate of William M. Anderson, deceased, brought this action at law to recover damages from the defendant, charging the defendant with operating his automobile in such a negligent manner as to cause the death of the plaintiff's decedent.

The plaintiff's amended petition set forth several acts of negligence on the part of the defendant which relate to whether or not the defendant failed to keep a proper lookout and failed to use due care in the operation of his automobile which struck plaintiff's decedent, wrongfully causing his death.

The defendant's answer was a general denial of any negligence on defendant's part as alleged in plaintiff's amended petition, and affirmatively alleged that the negligence of plaintiff's decedent was the proximate cause of his injuries which resulted in his death.

The plaintiff's reply denied any negligence on the part of plaintiff's decedent as affirmatively pleaded in defendant's answer.

The record discloses that about 8 a. m., May 12, 1949, a prisoner escaped from the Nemaha County jail at Auburn, Nebraska. The county sheriff endeavored to contact his deputy, but was unable to do so. He called Donald Grieb, a patrolman connected with the Nebraska Safety Patrol. Search was made to apprehend the escapee. In the early part of the evening a plan was formulated at a stop light in the city of Auburn at four intersection points, to set up a road block. The pur-

pose of the road block was to stop all cars proceeding out of Auburn. Those present when the road block plan was set up were the sheriff, his deputy, city police, patrolman Grieb, and William M. Anderson. Patrolman Grieb and William M. Anderson were designated to form the road block north of Auburn on U. S. Highway No. 75. They proceeded to what is known as "Three Mile Hill," three miles north of Auburn. They remained at this station for 15 minutes then moved south approximately one-half mile. At that point there was a crossroad. Before the accident the patrol car was parked on the crossroad two feet off the east edge of the pavement, headed toward the pavement, with parking lights on. About 15 or 20 cars were stopped when they were stationed at the "Three Mile Hill" point. Grieb and William Anderson were equipped with flashlights. Anderson's flashlight was in good working condition at all times, and gave a good light. All cars proceeding north from Auburn heeded the warning to stop, and none of the cars ran the road block. None of the cars proceeding south were stopped. Anderson was armed, and carried a revolver inside his waistband. Grieb remained with Anderson until 9:30 p. m. There were no barricades set up or flares set out. At 9:30 p. m., Mac Anderson, the son of William M. Anderson, arrived at the point where William Anderson and Grieb were stationed. Mac Anderson was desirous of obtaining the services of the patrol car for the purpose of using the spotlight to ascertain if the prisoner could be apprehended at a certain locality in the city upon information he had received. Patrolman Grieb and Mac Anderson left in the patrol car, and Elmer Chapp who had accompanied Mac Anderson stayed with William M. Anderson.

Chapp testified that he and Anderson proceeded to stop traffic going north from Auburn. Before the accident they had stopped 15 or 20 cars. Mac Anderson had left his car parked approximately one hundred feet

south of the road block on the east or right side of the road facing north, with the parking lights on. Chapp was stationed on the left or west side of the highway, as was William Anderson. Chapp noted that before the accident Anderson's flashlight was shining. He was standing 20 or 25 feet south of Anderson at that time on the west side of the center line of the highway. Two cars approached from the south, and the first one went by Chapp. The next thing he heard was a "thud." At that moment he was facing south and was going to check the second car. When he heard the thud he turned around and saw Anderson lying on the highway with his feet east of the center line and the rest of his body west of the center line of the pavement. The defendant's car stopped after the thud. The defendant got out of his car and asked Chapp what he had hit. Chapp told him that he had hit William Anderson. The last time Chapp saw William Anderson he was 20 or 25 feet north of him and about a foot and one-half or two feet west of the center line of the highway. This was about two to five minutes before the accident. He did not know where Anderson was standing at the time of the impact. He asked the defendant to help him carry Anderson's body across the road. One car proceeding from the north passed before the body was removed. The second car stopped. Anderson was placed in the back seat of this car and taken to the hospital. Chapp related a conversation had with the defendant wherein the defendant asked where Anderson was standing. Chapp pointed with his finger to where he was standing, which was just west of the center line of the highway.

The highway at the point where the accident occurred is a paved highway approximately 22 feet in width, with a four or five foot level shoulder on each side of the pavement, and a marked center line to separate the north and south-bound traffic. The highway is level, and the view unobstructed one-half mile south and one-

quarter mile north of the point where the accident occurred. The night was clear. The accident occurred between 9:30 and 10 p. m. The defendant's car came to a stop after the accident in the east or right side of the traveled portion of the highway.

The defendant's wife contacted the sheriff who was west of Auburn, and he went to the scene of the accident. He examined the road, and asked the defendant what had happened. The defendant said he had hit Anderson, and that he did not see Anderson until "he came up over the radiator." He did not say whether or not he saw Anderson before that time. The sheriff examined the defendant's automobile which was a 1947 Willys Jeep. The left headlight of the jeep was broken out, and there was glass on the concrete slab. The defendant's car was on the right shoulder of the road. He recalled no other damage to the defendant's car. He observed William Anderson's hat on the highway, and his flashlight which had been run over and mashed. On cross-examination the sheriff testified that he understood the defendant to say very distinctly that he saw Anderson first when he "came up over the radiator."

The plaintiff offered testimony of the defendant appearing in a deposition taken by the plaintiff before trial. We set forth in substance such part thereof as may be necessary in determining this appeal. As he proceeded north on U. S. Highway No. 75, he thought he saw a man get in front of his car, was not positive where the man was, and he struck the man. He made no observation of any object before the collision. He saw a little light on the west side of the road, a reflection of some kind of light about 15 feet from him, and saw no flashing of the light before that time. He did not know whether his lights would shine down the road a distance of 150 feet or not.

The examination of William M. Anderson made by a doctor at the hospital revealed that the patient had marked shock and delirium. There was a trauma to the

entire section of the upper abdominal organs which was severe; a compound-comminuted fracture of the left tibia and fibula, and fracture of the lower left femur; and there were numerous superficial wounds, a deep, large, scraping wound of the upper right abdomen, and other injuries. The patient was 52 years old. He was conscious during the early part of his stay in the hospital, and died about 11 p. m., May 14, 1949. The doctor gave as his opinion that the death was caused by external violence of recent origin.

Mac Anderson testified that he and his father each purchased a new flashlight on the day of the accident; that his father's flashlight had new batteries in it and was bright; and that his father was armed. He detailed the evidence with reference to the road block, his meeting with Chapp, the proceedings until the time that he left his father, and that his father was conscious when he saw him in the hospital, and suffered great plain.

There was no evidence introduced by the plaintiff as to the rate of speed the defendant was operating his automobile prior to or at the time of the accident.

At the close of the plaintiff's evidence the defendant moved to dismiss the petition of the plaintiff for the reason that the evidence of the plaintiff was insufficient to sustain a verdict against the defendant, and further, that the evidence of the plaintiff did not show that the defendant was in any manner negligent in the operation of his automobile as alleged in the plaintiff's amended petition. The trial court sustained the defendant's motion. Upon the overruling of the plaintiff's motion for a new trial, the plaintiff appeals.

For convenience we will refer to the parties as originally designated in the district court.

The plaintiff assigns as error (1) the order of the trial court in dismissing the plaintiff's petition as being contrary to law, and (2) that the trial court erred in excluding evidence offered by the plaintiff.

The question to determine in this appeal is whether

or not the evidence introduced on behalf of the plaintiff was sufficient to warrant submission of the case to the jury.

In Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607, this court held: "A motion to dismiss admits the truth of all material and relevant evidence, and the party against whom the motion was made is entitled to have it considered in the light most favorable to him and to have the benefit of all inferences reasonably deducible therefrom in testing the correctness of the action of a court in granting the motion." See, also, Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 143 Neb. 404, 9 N. W. 2d 807.

We have the foregoing rule in mind in determining this appeal.

The record discloses that the sheriff met with the deceased, the safety patrolman, and the city police, where a plan was formulated to set up a road block, and under the sheriff's direction, and that also of the patrolman, the deceased accompanied the patrolman to the place designated.

A private citizen may be impressed into service by a sheriff or other ministerial officer, in any county in this state, to assist in apprehending any person charged with or convicted of any offense against the laws of the state. See section 28-728, R. R. S. 1943.

The decedent had a right to be on the highway to perform the duties assigned to him. The proper discharge of his duties required him to assume a position on the highway which, in view of the heavy traffic, was necessarily a place of danger. In order to perform his assigned duties with reasonable adequacy, he could not be expected, nor did the law require him, to watch constantly and continuously for the approach of cars from any and all directions. His duty was to keep a reasonable lookout and to exercise care in the circumstances commensurate with the dangers and consistent with his faithful performance of the duties of his employment.

See Shaffer v. Torrens, 359 Pa. 187, 58 A. 2d 439.

The deceased's use of the highway was analogous to that of a pedestrian in that he was required to use reasonable care for his own safety and the safety of others, and in this respect his rights were equal with the rights of the operator of a motor vehicle in the use of the public highway. See Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N. W. 2d 114.

There were no eyewitnesses to this accident. The rule is that, in the absence of an eyewitness, or in the absence of any obtainable evidence as to what deceased did or failed to do by way of precaution, at and immediately before the injury, the presumption that he, prompted by a natural instinct, was in exercise of care for his own safety, obtains, and this presumption is one of fact, and whether it is overcome by circumstances shown in evidence is for the jury to determine. See Edwards v. Perley, 223 Iowa 1119, 274 N. W. 910.

"Where there is no eyewitness, no direct evidence of the accident causing the injury, the facts and circumstances may be proved by circumstantial evidence, and the presumption is raised by the instinct of self-preservation on behalf of the deceased that he was not guilty of contributory negligence, but was in the exercise of due care and caution for his own safety, unless the contrary is shown." Engel v. Chicago, B. & Q. R. R. Co., 111 Neb. 21, 195 N. W. 523.

There is no evidence as to what the decedent was doing immediately prior to the impact. When last seen before the impact he was 20 to 25 feet north of the witness Chapp, and a foot and one-half to two feet west of the center line of the highway. This was within a period of two to five minutes prior to the time of the accident. No presumptions of negligence will be indulged against him, and no evidence of his contributory negligence appears in the record. The burden of presenting this proof, of course, is imposed on the defendant.

The plaintiff offered evidence of the editor of the

Nemaha County Herald, a weekly newspaper, concerning a conversation had between the editor and the defendant for the purpose of formulating a newspaper article. This conversation occurred on May 15th or 16th, 1949, and was about the accident which resulted in the death of plaintiff's decedent. The witness was handed a newspaper article appearing in the May 19th edition of the paper to refresh his memory as to whether or not the article contained the statements of the defendant made to the editor with reference to the accident. He answered that it did. Objection was made to the competency of this testimony, which was sustained. An offer of proof was made that if the witness was allowed to testify he would testify that the defendant stated to him that he did not see anyone on the highway ahead of him nor at the side of the highway, did not see Anderson until he was right upon him, and it was too late to stop his automobile quickly enough to keep from hitting him. The offer of proof was objected to on the ground of competency, and the objection sustained. The plaintiff contends that the ruling of the trial court in rejecting such evidence constituted prejudicial error. The testimony was offered as an admission against interest.

Admissions against interest are defined as follows: " 'Any statement made by or attributable to a party to an action which constitutes an admission against his interest and tends to establish or disprove any material fact in the case is competent evidence against him.' " Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183.

In Gentry v. Burge, 129 Neb. 493, 261 N. W. 854, this court said: "It is a well-settled rule that admissions of a party against interest made in court or out of court, with reference to and pertinent to the issues being tried, are admissible in evidence against such party."

We conclude the evidence should have been admitted for the purpose offered.

It is apparent from the evidence that the defendant did not see the deceased until his automobile struck him.

The operator of an automobile equipped with headlights as required by statute, who does not observe a pedestrian until just before striking him, is not conclusively guilty of negligence. Under such circumstances it is clearly a question for the jury. The question whether the defendant should have seen the deceased, and the inferences to be drawn from the evidence adduced, are matters of evidence which a jury must decide. Whether the defendant was negligent in not sooner seeing the deceased and in not so operating his automobile with reference to the concurrent right of the deceased and himself upon the public highway as to avoid a collision was for the jury. The only question properly determinable was whether the defendant was negligent in failing to see the deceased in time to avoid the accident. See Johnson v. Anoka-Butte Lumber Co., *supra.*

"In those cases where reasonable minds may differ on the question of whether or not the operator of an automobile exercised the care, caution, and prudence required of him under the circumstances of the particular situation the issue of negligence on the part of the operator is one of fact to be determined by a jury." Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422. See, also, Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106.

We believe the plaintiff's evidence standing alone and acknowledged as true has probative force enough to make a prima facie case for the plaintiff. The evidence is sufficient to support a finding that the acts of the plaintiff's decedent were not the proximate cause of the collision, and that the defendant negligently injured the plaintiff's decedent which resulted in his death.

We deem it unnecessary to discuss other assignments of error.

For the reasons given herein, we reverse the judgment and remand the cause for a new trial.

REVERSED AND REMANDED.

WENKE, J., concurs in the result.