ALMA PIERSON, APPELLEE, v. T. C. JENSEN ET AL., APPELLANTS.

29 N. W. 625

Filed November 14, 1947.    No. 32267.

*Baylor, Bloss & Evnen,* for appellants.

*Davis, Stubbs & Healey,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and KROGER, District Judge.

KROGER, District Judge.

Plaintiff brought this action in the district court for Lancaster County for personal injuries, hospitalization, and medical expenses against defendant. Trial was had to a jury and a verdict was returned in favor of the plaintiff. Motion for new trial was filed and overruled. From the verdict, judgment, and order overruling the motion for a new trial the defendants appealed.

The defendants have assigned as grounds for reversal a number of errors, but in view of the disposition of this case it is only necessary to consider two of them.

The first is that the plaintiff was not a resident of Lancaster County at the time of the filing of her petition, and the second, that the court erred in not sustaining the defendant's motion for a directed verdict at the close of plaintiff's evidence and at the close of all of the evidence.

The following facts are undisputed. On August 12, 1945, the defendant Robert Gillming was operating a truck-trailer, owned by defendant T. C. Jensen, on Nebraska Highway No. 2, proceeding from Kearney, Nebraska, to Lincoln, Nebraska; said truck was loaded with 23 head of cattle and one horse. The trailer portion of the truck was equipped with a stock rack, the rear of which was painted white and was equipped with red clearance lights at each corner and a cluster of three red lights and red tail light directly below the bed of the trailer; in addition there were reflectors at each corner a few inches above the bed of the trailer. The bed of the trailer was four feet above the ground and the stock rack extended approximately five and a half feet above the bed. Plaintiff was driving a club sedan from Loup City, Nebraska, to Lincoln, Nebraska, by way of Highway No. 2. In the car with plaintiff were Shirley Thelander and Richard Bauer, all three occupying the front seat. At a point between one and a quarter and one and a half miles west of Seward, Nebraska, the car plaintiff was driving collided with the rear end of the truck operated by the defendant Gillming, as a result of which the plaintiff suffered the injuries and damages complained of.

The evidence of plaintiff was that she took over the operation of the car at Aurora, Nebraska, and drove from there to the point of the accident; that she was driving at approximately 40 miles per hour; that the car was in good operating condition and had proper headlights; that she was temporarily blinded by the bright lights of a car approaching from the east and that the first she saw of the truck was when it was

approximately one car length or fifteen feet ahead of her. Plaintiff testified that the truck did not have any lights, that she saw no reflectors, and that in her opinion it was standing still. In this she was corroborated by Shirley Thelander, a niece, who testified that she had been asleep and that the first thing she can remember before the crash occurred was that the distance was very short between the car she was in and the truck; that the lights of the truck were not lighted and it looked to her as though the truck was stopped; that approximately one-half of the trailer was occupying the paved portion of the highway, the remainder being on the shoulder of the highway. The other passenger, Richard Bauer, was unable to throw any light on the matter as he was asleep before and up to the time of the collision.

The evidence of the defendants was that at approximately one mile west of the scene of the accident the defendant Gillming had driven the truck off the highway onto the shoulder and stopped, but left the motor running for about a half hour to charge the battery, as he noticed his lights were beginning to dim; that at the end of half an hour he again pulled onto the highway, traveled about a mile when he again noticed his lights were growing dim, and again he proceeded to move the truck onto the shoulder of the highway; that he had succeeded in getting the tractor portion of the truck off the highway but that about one-half of the rear of the trailer was still thereon when the collision occurred; that his lights were still lighted, both the headlights and the lights on the trailer, at the time of the collision; that the car which plaintiff was driving wedged under the left rear portion of the trailer, the center of the bumper apparently striking the left rear wheels of the trailer; and that, except for those broken by the collision, the lights on the truck-trailer were still lighted some minutes after the crash.

The undisputed evidence further shows that the accident happened at approximately 10:30 p. m., that the

weather was clear, the road was dry, and that the road at that point and for some distance in either direction was practically level.

Regarding the question as to plaintiff's residence, the testimony of plaintiff is that she had lived in Lincoln for about two years before the filing of her petition; that she voted in Lancaster County, Nebraska; and that in June 1946, sometime after the filing of her petition, she went to make her home with her brother in Valley County, until such time as she could again work, when it was her intention to return to Lincoln. This evidence stands undisputed. It is true that in her testimony plaintiff referred to Valley County as being her home, but it is clear from reading the entire testimony that she was referring to the place where she was raised and where her relatives lived, and not to her legal residence. From all the evidence in the record we find that plaintiff's residence was in Lancaster County at the time she commenced her suit.

The other assignment of the defendants, which we will now consider, presents a more serious question. From the record it is evident that if the defendant Gillming was guilty of any negligence, it would have to be his attempting to operate the truck on the highway after he first discovered that his lights were growing dim. There is no evidence that the lights had ever caused any difficulty before that time, or that he had any warning that they were about to fail. At the time he first noticed his lights dimming he was within two and a half miles of Seward. He stopped the truck, left the motor running for about a half hour to charge his battery, and then proceeded down the highway. After having gone only a short distance he noticed that they were again growing dim and he attempted to again pull off the highway, but the collision occurred before he could complete the operation. The evidence of the plaintiff discloses that she was driving at a speed of about 40 miles per hour, and that she did not see the truck of defendant until

it was about 15 feet in front of her. She excuses her failure to see the truck by stating that she was momentarily blinded by lights of an approaching car and that immediately upon passing the approaching car she was confronted with the truck ahead of her, some 15 feet away, with which she had no opportunity then of avoiding a collision. This court has held that "the existence or presence of smoke, snow, fog, mist, blinding headlights or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances." Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315. It would seem reasonable to assume that had the plaintiff been keeping a proper lookout she would have seen the defendant's truck before the car with the bright headlights approaching from the east reached the truck. At that time the lights of the approaching car would silhouette the truck and that must have occurred when the plaintiff was less than 200 feet from the truck.

In the case of Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572, this court announced that "As a general rule it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps." Since that decision, some exceptions to the general rule have been recognized, but at no time has this court disaffirmed the rule laid down in Roth v. Blomquist, *supra*. If it is possible to classify the exceptions that have since been made, it perhaps could be said that the exceptions apply in those instances where the motorist, acting as a reasonable and prudent person, was justified in believing that no danger existed, or where the situation creating the danger is in the nature of a trap.

In this case the plaintiff argues that the decision of

Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422, is controlling. The facts have a great deal of similarity. There is this difference, however. In Miers v. McMaken the evidence disclosed that the body of the truck extended back over the wheels some considerable distance and all of the unit except one corner of the trailer was off the pavement. It was not shown how high the body was above the road, or whether an approaching motorist had any reason to anticipate that the truck body extended onto the paving.

With reference to the lack of lights on the rear of the trailer, there was the testimony of the plaintiff and her niece, each stating that there were no lights burning on the rear of the truck. In that connection it must be remembered that plaintiff also testified that she was driving about 40 miles per hour and that she first saw the truck when it was about 15 feet away. She admitted that when her deposition was taken, a very short time before the trial, she had stated that when she first saw the truck it was only a matter of inches away. The niece had been asleep and testified that when she awakened she did not have time to make any outcry or give any warning between the time she first saw the truck and the collision. Considering the instant that could only have elapsed between the discovery of the truck on the highway and the collision, the testimony regarding the lack of lights is not impressive; particularly is this true in view of the testimony of the witness Kenneth Haas, who testified that he lived near the place where the accident occurred, that he reached the scene of the accident in a minute or a minute and a half after the crash and the lights of the truck were on and were not turned off until flares had been placed.

From a consideration of all of the evidence we find that the negligence of the plaintiff, when compared with any possible negligence on the part of the defendants, which we do not decide, was more than slight as a matter of law, and the defendants' motion for a di-

rected. verdict should have been sustained. For the reasons given, the judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.