CHARLES BURESH, APPELLEE, V. KING GEORGE, DOING BUSINESS AS BLUE LINE EXPRESS & TRANSFER COMPANY, APPELLANT.
31 N. W. 2d 106

Filed February 25, 1948. No. 32263.

*Joseph H. McGroarty,* for appellant.

*Fitzgerald, Tesar & Welch,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LANDIS, District Judge.

WENKE, J.

The plaintiff, Charles Buresh, brought this action in the district court for Douglas County against the defendant, King George, doing business as Blue Line Express & Transfer Company. The nature of the action is in tort to recover for damages alleged to have been caused by negligent conduct imputable to the defendant. From a verdict and judgment for the plaintiff, his motion for new trial having been overruled, the defendant appeals.

For convenience and clarity the parties will be herein referred to as they appeared in the lower court, that is, the appellant will be referred to as the defendant and the appellee as the plaintiff.

Defendant raises the question as to the sufficiency of the evidence to support the verdict and the judgment entered thereon. In considering this issue we apply the following rules as approved in Moncrief v. Interstate Transit Lines, 129 Neb. 168, 261 N. W. 163:

"A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence."

" 'Where different minds may reasonably draw diverse conclusions from the same facts as to whether or not

they establish negligence or contributory negligence, those issues must be submitted to the jury.' Casey v. Ford Motor Co., 108 Neb. 352."

The accident here involved happened on December 28, 1945, at about 6:25 to 6:30 p. m. in the city of Omaha at about 4200 south on Thirteenth Street. It occurred when the plaintiff's Dodge sedan, being driven by his son Raymond, ran into the defendant's truck which was standing on the east driving lane of the street facing north.

The cause for defendant's truck being parked on the driving lane was occasioned by its running out of gasoline. The truck was of two and a half ton capacity and used by the defendant in the operation of his business. At the time it was being driven by his employee whose name was Gardner. That morning Gardner had put in 7 or 8 gallons of gasoline in order to fill the tank. The truck had a tank of about 10-gallon capacity and that was ordinarily enough for the average day's work. However, on this day, while they were delivering some crated furniture in South Omaha, it became stuck in some snow in an alley. It took them about 45 minutes to an hour to get out, during which time they were using the motor. They then proceeded toward downtown Omaha by way of Thirteenth Street. The only gasoline gauge on the truck was on the tank and located under the seat but the driver, after getting out of the alley, did not look to see if he had sufficient gasoline to get downtown. Nor did he stop on the way for that purpose, although he passed three filling stations on his way down Thirteenth Street. After the truck stalled the driver spent a few minutes parking it with his starter. He parked it against the snow piled in the east parking. Without looking to the rear he then switched off his lights and was proceeding to get out of the cab to go get some gasoline when the accident occurred.

Thirteenth Street is a 56-foot four-lane arterial high-

way with parking on each side. It runs in a north and south direction. The outer 7 feet on each side is for parking and surfaced with concrete; the next 11 feet on each side is surfaced with brick and constitutes the driving lanes; and the 10 feet on each side of the center are the passing lanes and made of concrete. At the point of the accident the street slopes at about a 2 or 3 percent grade in each direction, sloping uphill to the north and downhill to the south.

At the time of the accident darkness had fallen but the weather was clear, although very cold. Previous to the day of the accident there had been a heavy snow but this had all been removed from the traveling surface of the street which was clear. The snow was piled up in the parking area on each side.

Raymond Buresh was driving his father's car. He was traveling north on Thirteenth Street when, at a point just east of the street light in front of the German Home, he ran into the stalled truck of the defendant. At the place of the accident he was traveling upgrade toward the north. He testified he was driving with his city driving lights. These lights extended out for a distance of about 50 or 60 feet. He further testified he was going about 15 to 20 miles an hour and traveling in the east driving lane. He noticed the truck some 40 or 45 feet in front of him and at first did not know just what it was but immediately applied his brakes and turned to the left, but not in time to avoid the collision. The right front side of the car struck the left rear of the truck body and damaged the car and injured the plaintiff. The son further testified that his windshield was clear and that there was no oncoming traffic or lights. In fact, the record shows there was no traffic on the street at the time and that there was over 31 feet of open traveling surface to the left or west of the stalled truck. He further testified that the truck had a lattice body that was painted blue and that it was dirty, that the truck

was empty and had no endgate, that it had no reflectors or taillight, and that no flares had been put out.

From the evidence of the son, and other witnesses, there is evidence from which the jury could have found that the truck had a stake body in which there was no endgate; that it was of a dark color, dirty, and parked on a brick paving surface; that it had neither reflectors nor taillight; and that no flares had been put out.

From this summary there is no question but what there was sufficient evidence upon which the jury could base its finding that the defendant was guilty of negligence. See Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422; Giles v. Welsh, 122 Neb. 164, 239 N. W. 813.

As to the question of the negligence of the driver of the plaintiff's car we said in Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572: "As a general rule it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps."

We therein approved from Serfas v. Lehigh & N. E. R. R. Co., 270 Pa. 306, 113 A. 370, as quoted in Berry, Automobiles (5th ed.), § 177, p. 142: "It is the duty of a chauffeur traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover grade crossings, or other obstacles in his path, in time for his own safety, and to keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision."

The basis of this rule is that a driver of an automobile is legally obligated to keep such a lookout that he can see what is plainly visible before him and that he cannot relieve himself of that duty. And, in conjunction therewith, he must so drive his automobile that when he sees the object he can stop his automobile in time to avoid it.

However, on unlighted streets and highways, and

those lighted but where the light is obstructed, we have made exceptions to this general rule when the nature of the object or its condition, such as color, dirt, et cetera, in relation to the highway or road, affected its immediate visibility or when, because of the lights of oncoming traffic, the driver's attention is distracted or his vision impaired and his opportunity for immediate discernment thereby affected. In such cases we have held that the issue of the driver's negligence, if any, and the degree thereof is for the jury.

As stated in Roth v. Blomquist, *supra*: "There are recognized exceptions to the general rule or instances to which it does not apply, among them an unbarricaded, unknown, open, unlighted ditch across a highway that could only be seen at close range and not anticipated (Tutsch v. Omaha Structural Steel Works, 110 Neb. 585); corner of a platform with a narrow edge extending from a drag line over a street car track and discernible only in close proximity to the obstruction (Day v. Metropolitan Utilities District, 115 Neb. 711); an obstruction consisting of a pile of gravel similar in color to the surface of the highway (Frickel v. Lancaster County, 115 Neb. 506)."

Since Roth v. Blomquist, *supra,* we have applied this exception to many situations. As examples of its application are the cases of Swinford v. Finck, 139 Neb. 886, 299 N. W. 227, where a dark colored endgate was lying on the highway; Miers v. McMaken, *supra,* where the corner of the truck body extended out over the traveled portion of the highway; and Adamek v. Tilford, 125 Neb. 139, 249 N. W. 300, where the object was the same color as the street and the light from the street light was obstructed. See, also, Giles v. Welsh, *supra;* Monasmith v. Cosden Oil Co., 124 Neb. 327, 246 N. W. 623.

Here the evidence shows that the accident took place east of or opposite to a street light located in front of the south edge of the German Home. It should be

said that the German Home is located on the west side of Thirteenth Street opposite of where the accident happened and that it was lighted. The evidence shows that Thirteenth Street is lighted with a staggered system of street lights, that is, every other light is placed on the opposite side of the street. These lights are 280 feet apart on each side or 140 feet apart on opposite sides. Each light is 20 feet high and extends out over the surfaced part of the street 5 feet, thus making the light to the west some 33 feet west of the east driving lane. This is the lane in which the plaintiff and his son testified the truck was stalled. There was also a light on the east side about 140 feet to the north and one on the east side about 140 feet to the south. These lights were all burning. The lights used in this system are General Electric 79 Luminaire.

Each Luminaire is hermetically sealed and contains a 600 candlepower incandescent globe and a glass reflector. The reflector diffuses the light and throws it down onto, across, and up and down the highway thus avoiding any waste of light on areas off the highway. The light produced is called a diffused light so that as the light from one joins that of the other they diffuse into each other, thus completely lighting the entire highway. While there is a little more light immediately below each Luminaire it generally covers the entire highway with an even distribution thereof and a parked car or truck could be seen at a distance of a block or more.

As the truck was stalled in the east driving lane there was 31 feet of clear driving surface to the west, if the west parking was filled with snow, in which the driver of the car could have turned to the left in order to pass. At the time of the accident the evidence shows there was no oncoming traffic. In fact there was neither traffic to divert the driver's attention nor anything to obstruct or affect his view; nor was there anything that interfered with the light from the street lights.

Under this situation we think the factual situation

brings this case within the general rule as announced in Roth v. Blomquist, *supra,* and not within any of the exceptions thereto for here the truck was clearly visible even without the aid of the driver's lights and his opportunity to see was in noway impaired or interfered with. There is nothing that will excuse his failure to see what was plainly in sight if he had maintained a proper lookout. We think the facts of this case are in effect the same as those in Redwelski v. Omaha & C. B. Street Ry. Co., 137 Neb. 681, 290 N. W. 904, where we applied the general rule as herein already referred to.

When the court can say, as a matter of law, that the plaintiff is guilty of negligence that is more than slight as compared with that of the defendant and that such negligence is clearly the proximate cause of the accident then the court should direct a verdict for the defendant and dismiss the action. Dickenson v. County of Cheyenne, 146 Neb. 36, 18 N. W. 2d 559.

In view of the above we hold that the action should have been dismissed.

REVERSED AND DISMISSED.