GEORGE FLOYD, ADMINISTRATOR OF THE ESTATE OF ARTHUR FLOYD, DECEASED, APPELLANT, v. FLOYD EDWARDS, APPELLEE.

33 N. W. 2d 555

Filed July 7, 1948. No. 32405.

*Hubka & Hubka*, for appellant.

*Jack, Vette & Elliott*, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

This action was brought to recover damages for the death of Arthur Floyd, a pedestrian in the street, who lost his life when struck by defendant's family car, driven by his son. The jury returned a verdict for defendant, upon which judgment was entered. Plaintiff's motion for new trial was overruled, and he appealed, assigning that the trial court: (1) Erred in submitting the issue of contributory negligence to the jury; (2) erred in overruling plaintiff's motion at the close of the trial to withdraw the question of negligence from the jury and submit only the question of the amount of plaintiff's damages; (3) erred in refusing to give plaintiff's requested instructions No. 3 or 4; and (4) the verdict was contrary to the law and the evidence. We sustain plaintiff's first assignment of error, reverse the judgment, and remand the cause for a new trial.

Disposition of the fourth assignment follows naturally as a corollary of our conclusions with reference to assignments 1 and 2. Therefore, it will not require separate discussion. Hereinafter, Arthur Floyd will be generally referred to as the deceased and defendant's son as the driver.

We turn first to the relevant evidence as a primary basis for our conclusions, under well-recognized rules of applicable law hereafter discussed.

Concededly, the car involved was the family car of defendant, which, at the time in question was being driven by his son with defendant's permission. The evidence discloses that the accident happened between Twentieth and Twenty-first on East Court Street, a black-topped highway, 41 feet 10 inches wide, extending east and west in Beatrice. The street was also designated as Highway 3 and 4. There were no sidewalks on either side of the street from Nineteenth east, and it was

customary for pedestrians to walk in the street. Deceased, during his lifetime, lived one block east and one south of Twenty-first and East Court, and he was in the habit of walking home nights. In reporting to the police after the accident, the driver said in part that he "Did not see pedestrian walking in lane of traffic."

At the time of the accident on August 17, 1945, the street was dry, and the night was dark with some clouds. There was evidence that it looked like a storm was coming, with lightning flashes in the east. There was a one-bulb street light at the intersection of Twentieth Street, and also at Twenty-first Street. The latter was on the northwest corner, where a tree taller than the light pole shut off or shaded away the effect of the light to the west on the street.

In that regard, a police officer testified: "Q On this night with the aid of these street lights, even if there had been no other light, with the aid of these street lights in the vicinity where this accident happened you could see an object? A My experience in driving out that way every night, six or seven, maybe a half dozen times a night, is that it is awfully hard to see anybody from 19th clear to 26th."

A witness who drove out East Court Street while the body was still in the street, testified: "Q Well, did that tree have any effect on the light? A I think so, that is, when I drove past, if the tree wasn't in the road, a fellow could see the body more plainly there. Q You had difficulty seeing the body? A Yes, if I hadn't seen the flashlight. Q You wouldn't have seen it at all? A Probably not."

The county attorney who came upon the scene testified: "Q I asked you whether it would be possible that night, I mean from these street lights where this accident happened, even if there hadn't been any light from his car for any distance, for a person to see a man dressed exactly as Floyd was, in your judgment?

A If he was in the. area of the lights, I would say
yes. * * * Q As a matter of fact, even without any
headlights at that point, if a person was looking down
the street, the person could see with just the aid of
the street lights? A I would say, if within the area
cast by the street light, one should be able to see
somebody."

There was a house on the northwest corner of Twenty-
first Street, and another next west of it. The accident
happened in front of the latter, at a point varying in
the evidence as from 125 to 200 feet west of the Twenty-
first Street intersection.

At about 11:30 p. m., the driver, a boy 18 years of
age, on leave from naval service, and driving his
father's car, proceeded east on the street involved, to-
ward his home in Crab Orchard. A girl friend was
with him. Concededly, they had not been drinking
any intoxicating liquor. The car was in good mechanical
condition. There is evidence that the driver had both
hands on the steering wheel and that he was driving
on the right side of the highway from 20 to 30 miles an
hour, within the legal limits as provided by the ordi-
nances of the city of Beatrice. His lights were on dim
for city driving, and so adjusted as to make the highway
visible from 50 to 75 feet ahead.

The driver testified that he was looking down the
road when just instantly he saw a pedestrian two feet
in front of his car. There was a crash. The driver
immediately applied his brakes. They did not slide,
screech, or leave skid marks. The person struck, dressed
in dark blue overalls, dark blue jacket, and dark cap,
rolled off the left fender to the pavement, and the car
stopped. It did not swerve. The driver says that he
stopped within two car lengths, and when he opened
the door, the body was in the street by the side of his
car. There was evidence that the girl got out of the
car, after which the driver made a U-turn, then parked
on the other side of the street facing west, and came

back, where the body of deceased lay in the street.

There was other evidence that after the body rolled off into the street the driver went on east without stopping, until in or almost in the intersection, when he stopped momentarily, then turned around and came back. The left front headlight and left windshield were broken. The glass therefrom lay south of the center of the street 30 or 40 feet west of the place where deceased rolled off and lay in the street. There were three disinterested witnesses who heard the crash, saw the car, and observed either its speed or movements at or after the accident, but none saw deceased in the street prior to the accident.

After the accident, the body lay in the street, head to the northeast, feet southwest, concededly south of the center of the street. The exact distance was in dispute, and varied from close to the center to several feet south. He was still living, but unconscious and breathing heavily. His death occurred a short time after an ambulance removed him to a hospital.

The driver testified that after the accident: "I noticed a slight alcoholic odor. * * * I didn't make any examination, only I did just catch an aroma. * * * I caught the odor." However, he did not know whether the odor came from the breath or body of the injured man, or where it came from.

A taxicab driver testified that she saw deceased sometime between 10 and 11 p. m. walk out and stand behind a car between Fourth and Fifth Streets. She said he "looked like he was just getting ready to cross the street. * * * I said 'Hello, Art,' and he said hello." She did not stop to talk to him or anything. She was asked: "Q Did he look like he had been drinking? A I thought he did. * * * Q All you did is you walked by him, said hello, he walked out, stood there on the paving, yet you want to tell the jury he was drunk? A No, I thought he had been drinking." She didn't "smell anything," "didn't see him drink anything," or

"wobble or anything," and she could not "tell anything from his talk."

Concededly, when the body got to the undertaking parlors, his clothes were removed and a flat, broken, pint-size, ordinary-type whisky bottle was found therein, and there was the odor of liquor from saturation of his clothes. Whether or not the bottle was still sealed or had been previously opened, and whether or not deceased ever consumed anything from the bottle or drank any liquor prior to the accident, was not shown. The undertaker and county attorney both testified that there was no odor of acoholic liquor on the body, but that it was from his clothes. The persons who saw deceased while he was still living and breathing heavily had no recollection of smelling liquor upon his breath.

In rebuttal, a friend and chum of deceased testified that he saw him about 20 minutes before the accident, at which time deceased was normal. He testified that he never knew of him drinking whisky, and that deceased was absolutely not intoxicated. Members of the family of deceased testified that they never saw or heard of him drinking whisky.

In the situation aforesaid, the trial court submitted to the jury the question of whether or not deceased was intoxicated as a circumstance for their consideration in determining whether or not he was guilty of contributory negligence proximately causing the accident.

In that connection, we conclude that there was no competent evidence adduced which could possibly sustain any finding that deceased was intoxicated or guilty of any contributory negligence. There was no presumption that deceased was guilty of contributory negligence. Rather, under the circumstances presented, the presumption was otherwise. Pedestrians have the right to use a public street at any time of the day or night. They have a legal right to travel or stand momentarily in the street, and the mere fact that one does so does not render him guilty of contributory negligence

as a matter of law. It is generally recognized that in the absence of restrictive applicable statutes or ordinances, a pedestrian has a right to walk longitudinally in a street or highway, and is not as a matter of law guilty of contributory negligence in doing so. A person walking in the streets or highways is bound to use ordinary care to discover approaching motor vehicles, and a failure to do so is negligence, but he is not, as a matter of law, negligent in failing to turn about constantly and repeatedly to observe the possible approach of vehicles from behind him, especially where there is ample room for a vehicle to pass him. Pedestrians lawfully upon a street or highway may ordinarily rely upon the reasonable care of automobile drivers, and it is not negligence as a matter of law in failing to anticipate a driver's negligence. Cotten v. Stolley, 124 Neb. 855, 248 N. W. 384; Brenning v. Remington, 136 Neb. 883, 287 N. W. 776; and Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N. W. 2d 114.

We conclude that since the alleged intoxication and contributory negligence of deceased was without any competent factual support in the evidence, the issues should not have been submitted to the jury and the trial court erred in doing so. In that regard, this court has recently held that: "Where contributory negligence is pleaded as a defense, but there is no evidence to support such defense, it is prejudicial error to submit such issue to the jury." Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439. See, also, Johnson v. Anoka-Butte Lumber Co., supra.

We turn then to the question of whether or not defendant was negligent as a matter of law, as argued by plaintiff. We conclude that he was not. Plaintiff, as reflected both in his petition and proferred instructions Nos. 3 and 4, which the trial court refused, relied primarily upon the rule, established in Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572, 58 A. L. R. 1473, wherein it was held: "As a general rule it is negligence as a matter of law for a motorist to drive an automobile so

fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps."

However, there are well-established exceptions to the rule, dependent upon the nature or condition of the object in relation to conditions on or adjacent to the highway adversely affecting immediate visibility of the object. Their nature is discussed at length in the recent opinion of Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106. We need not discuss at length or repeat them here.

It is sufficient to say that the factual circumstances heretofore recited bring the case at bar squarely within such exceptions, which required submission of the issues of the driver's alleged negligence to the jury for its determination, as was done by the trial court in its instructions.

By analogy, the foregoing discussion adversely disposes of plaintiff's contention that the trial court erred in its refusal to give his requested instructions Nos. 3 and 4, which makes it unnecessary to further discuss plaintiff's third assignment of error, except to say that the trial court in instructions Nos. 9 and 10 gave as much thereof as was applicable under the circumstances.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED.