VICTOR A. WEISENMILLER, APPELLANT, V. GUNNAR A. NESTOR, APPELLEE.

43 N. W. 2d 568

Filed July 24, 1950.   No. 32741.

*Max Kier* and *Charles Bocken*, for appellant.

*Towle, Young & Mattson*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff brought this action to recover damages for

personal injuries alleged to have been proximately caused when he was run over on a highway at night by an automobile owned and negligently operated by defendant. After plaintiff had rested, defendant moved for a directed verdict for insufficiency of the evidence. At that time the motion was overruled, but upon renewal thereof at conclusion of all the evidence the trial court sustained such motion and instructed the jury accordingly, whereupon it returned a verdict for defendant and a judgment was entered in conformity therewith. Plaintiff's motion for new trial was subsequently overruled and he appealed, assigning substantially that the trial court erred: (1) In sustaining defendant's motion for directed verdict; (2) in failing to submit the cause to the jury for its determination; and (3) in overruling plaintiff's motion for new trial. We sustain the assignments.

Plaintiff argued that there was sufficient competent evidence adduced by him from which it could have been reasonably concluded that defendant was negligent in one or more of the particulars alleged, which proximately caused personal injuries and damages to plaintiff. We sustain that contention.

In that connection, plaintiff's petition alleged substantially that defendant negligently drove his car at an excessive rate of speed without proper regard for the condition of the highway and the traffic thereon; without having his car under proper control; without maintaining a proper lookout to observe plaintiff's position on the highway or taking precautions to avoid running over him; and drove his car at such a rate of speed as to be unable to stop within the range of his vision.

Plaintiff also pleaded the last clear chance. However, as stated in Parsons v. Berry, 130 Neb. 264, 264 N. W. 742: "The doctrine of last clear chance applies in those cases where there is negligence of the defendant subsequent to the negligence of the plaintiff and the defendant's negligence is the proximate cause of the in-

jury." In the record before us, we find no competent evidence from which it could be reasonably concluded that plaintiff was placed in a position of peril by his own negligence. Therefore the only question presented is whether or not defendant was negligent in some manner alleged which proximately caused the accident and resulting injuries and damages to plaintiff. True, plaintiff was in a position of peril, but how he got there is not shown. We conclude that under the circumstances presented, the last clear chance doctrine had no application.

At the outset it should be observed that a motion to dismiss or for directed verdict admits the truth of all material and relevant evidence adduced by the party against whom the motion is made, and such party is entitled to have such evidence considered in the light most favorable to him and to have the benefit of all inferences reasonably deducible therefrom in testing validity of the court's action in disposing of the motion. Moncrief v. Interstate Transit Lines, 129 Neb. 168, 261 N. W. 163; Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 143 Neb. 404, 9 N. W. 2d 807; Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607; Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367. In the light thereof and other applicable rules hereinafter discussed, we have examined the record.

Competent and relevant evidence adduced by plaintiff was substantially as follows:

During the evening of May 26, 1948, plaintiff, with his mother and brother, went for a ride in the brother's car. They drove from Lincoln south to Princeton, and about 11 p. m. started back to Lincoln over U. S. Highway No. 77. A short distance south of the Turnpike, they had a flat tire. The filling station nearby was closed, and farm houses were dark. Having no tools with which to make repair, the brother and mother, by pre-arrangement, started walking south and plaintiff started walking north to obtain assistance. The brother

and mother did obtain assistance and thereafter drove on into Lincoln without seeing or hearing of plaintiff again until early the next morning when they were informed that he was in a hospital.

In the meantime, plaintiff had walked north on the east side of the highway. He was wearing new shoes which hurt his feet, so he removed his shoes and sox and placed the sox in his shoes which he tied together and carried in his hands or about his neck. He tried unsuccessfully to thumb a ride from passing motorists as he walked north on the pavement in his bare feet.

He did not recall being struck by anything, but the next thing he did remember was that he was in quite a deep ditch on the east side of the highway. There was then something wrong with his right foot or leg, because he could not walk on it. However his arms were all right, and using his hands and arms he crawled out of the ditch up to the edge of the road, where everything blacked out and he remembered nothing again until he was in a car being taken to a hospital.

Theretofore at about 2 a. m. a car occupied by the driver, his wife, their two children and two other adults came from the south traveling on the east side of U. S. Highway No. 77 at 40 to 50 miles an hour. At a point opposite Lincoln Memorial Cemetery the driver saw something like a body prone in the west lane of the highway. His wife also saw the object which looked like a bundle of clothes. They drove on north for a couple of blocks then turned around and drove back to investigate. They drove slowly past and there saw that it was the body of a man dressed in dark clothes lying head to the south, feet stretched out together, and arms folded with a shoe on his chest. They honked their horn and flashed their spotlight upon him, but he did not move. He did not then look like he was injured, but they had no opportunity to examine him and could not tell. They then drove on south about a half block or more and turned into the driveway of the cemetery

on the east side of the highway, intending to turn around and stop. As they did so, defendant's car was seen coming from the north quite some distance away at about 40 miles or more an hour.

Thereupon when defendant's car was a half block to a block from the body, they flashed and continued to flash their spotlight across and on the body, which could be seen "very clearly," "very plain," "bright as day," "lit him up like a Neon sign." However, ·defendant's car did not turn out or slow down but kept on coming and ran right on over the body, later identified as plaintiff, then swerved back and forth across the whole road and went on down the highway without stopping. After he was run over, plaintiff was seen trying to sit up or raise up, and the driver of the car who attempted to warn defendant turned around, overtook defendant, told him that he had run over a man, and urged him to come back, but defendant declared that he "never hit anything" and drove on without returning to the scene of the accident. The number of his Nash automobile was taken, however, and its ownership was traced to defendant, who a few days later admitted that he was driving his Nash car allegedly involved at the particular time and place; that the driver of another car ran him down, told him that someone had been run over, and requested him to return, but feeling that he was not involved, he did not do so.

After stopping defendant, the driver returned to the scene of the accident, where plaintiff was placed in another car, which had appeared in the meantime, and taken to a hospital. When placed in the car, it was observed that plaintiff limped and that his right arm was broken. Whether they first then observed that his head was cut and bleeding or that was later seen at the hospital is not clear. Nevertheless, at the hospital the driver of the car and another adult, as well as plaintiff's physician, did observe that plaintiff's head and face were bleeding from a cut on his chin, a large Y-shaped cut

over his forehead, and partially back toward the back of his head; that his right arm was badly broken; that he had a deep gash or puncture wound in his right thigh; his right heel was practically torn off; and that there were numerous bruises and scratches around his head and upon the rest of his body. Upon admission to the hospital, plaintiff was generally rational, although having been theretofore in a coma he was unable to remember any details of the accident and was suffering from shock and loss of blood. The fracture of his arm was compound and comminuted so badly as to require reductions, subsequent operations, bone grafting, and hospitalization extending over a period of several months.

Whether or not plaintiff had his sox on or off at the time of the accident is of little consequence. The torn, dirty, and bloody clothing worn by plaintiff at the time of the accident and removed at the hospital, was offered in evidence. However, contrary to defendant's contention, the condition of such clothing could be of little if any assistance in determining how the accident happened or how plaintiff received the injuries sustained. We do call attention to the fact, however, that there were marks up plaintiff's right pant leg having the appearance of tire marks.

To the foregoing evidence there are applicable rules of law supporting plaintiff's contentions. As a general rule, it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid collision with an object within the area lighted by his headlights. Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572, 58 A. L. R. 1473. Also, the failure of a motorist to see what was plainly in sight if he had maintained a proper lookout cannot ordinarily be excused. Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106.

However, there are exceptions to such general rules when the object is the same color as the roadway, and

for that reason or for other sufficient reasons the object cannot ordinarily be observed by the exercise of ordinary care in time to avoid collision therewith. See Adamek v. Tilford, 125 Neb. 139, 249 N. W. 300, wherein it was held that plaintiff's own evidence established as a matter of law that the accident was unavoidable. However, such a situation is not presented here.

This court has held in cases similar to that at bar that where reasonable minds may differ upon the question of whether or not the operator of an automobile exercised the care, caution, and prudence required of him under the circumstances of the particular situation, then the issue of negligence on the part of the operator is one of fact to be determined by a jury. Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422; Buresh v. George, *supra;* Pierson v. Jensen, 150 Neb. 86, 33 N. W. 2d 462; Floyd v. Edwards, 150 Neb. 41, 33 N. W. 2d 555; Anderson v. Nincehelser, 152 Neb. 857, 43 N. W. 2d 182.

Upon the question of whether or not there was competent evidence adduced sufficient to sustain a finding that the alleged negligence of defendant proximately caused personal injuries and damages to plaintiff, the applicable rule is that a party is required to establish by a preponderance of the evidence that an injury occurred in the manner alleged, but when facts and circumstances are adduced, as in the case at bar, from which the manner of sustaining injuries and damages may be logically inferred, an issue thereon is for the jury. Fonda v. Northwestern Public Service Co., 138 Neb. 262, 292 N. W. 712; Markussen v. Mengedoht, 132 Neb. 472, 272 N. W. 241. We conclude that there was sufficient evidence to sustain a finding that defendant was negligent in one or more of the particulars alleged, and that such negligence proximately caused injuries and damages to plaintiff.

In that connection, this is not a case involving joint or concurring negligence of two or more persons thus imposing liability upon defendant as a joint tort-feasor.

If defendant is liable to plaintiff for injuries and damages, he is liable for only such as a preponderance of the evidence shows that plaintiff sustained as a proximate result of defendant's negligence, as distinguished from those, if any, caused by others. In other words, if defendant negligently operated his car and thereby proximately caused injuries to plaintiff, then defendant is liable to respond in damages for the injuries inflicted by his car. Under the circumstances presented here, that was a question for the jury to determine. Kleiner v. Johnson, 249 Wis. 148, 23 N. W. 2d 467; DeWitt v. Gerard, 274 Mich. 299, 264 N. W. 379.

For the reasons heretofore stated, the judgment should be, and hereby is, reversed and the cause is remanded for new trial.

REVERSED AND REMANDED.