MARGARET HEENEY, ADMINISTRATRIX OF THE ESTATE OF RAYMOND HEENEY, DECEASED, APPELLANT, v. LLOYD CHURCHILL, APPELLEE.

50 N. W. 2d 72

Filed November 23, 1951. No. 32988.

*Mark J. Ryan, George W. Leamer,* and *Charles E. Mc-Dermott,* for appellant.

*Warner & Warner, Harper, Gleysteen & Nelson,* and *Charles N. Woolery,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by Margaret Heeney, administratrix of the estate of Raymond Heeney, deceased, as plaintiff, against Lloyd Churchill, defendant, to recover damages for the alleged wrongful death of plaintiff's decedent. The case was tried to a jury resulting in a verdict in favor of the defendant. Plaintiff filed a motion for new trial. From the order overruling the motion, plaintiff appeals.

For convenience we will refer to Raymond Heeney as the deceased, the appellant Margaret Heeney as the plaintiff, and the appellee Lloyd Churchill as the defendant.

The pleadings, insofar as necessary to consider in this appeal, are as follows: The plaintiff's petition alleged in substance that the defendant drove his automobile in a reckless and negligent manner, at an excessive rate of speed along the road in question, without keeping the proper lookout to enable him to stop his automobile within his view, and that the negligence of the defendant,

as alleged, was the direct and proximate cause of the death of the deceased.

The defendant's answer is in effect a general denial. Although it alleges the deceased did not keep a proper lookout and warn the defendant of his presence on the highway, and placed himself in a position where he could not, by the exercise of ordinary care, be seen by the defendant, there is no affirmative allegation therein charging the deceased with contributory negligence.

The record discloses that the defendant lives about 2½ miles northwest of Hubbard. On August 21, 1947, in the evening he, his wife, and daughter, went to a ladies club party at Dose's, approximately 7 miles southwest of Hubbard. The defendant drove his 1936 Ford coupe. They stayed at Dose's, had a midnight lunch, and left for home. The defendant and his family followed Marion Grove and his family into Hubbard where Grove stopped to let his wife's folks out of the car. The defendant went on by Grove and proceeded toward his home. The headlights and taillight on his car were working. To go to his home the defendant took the road north of Hubbard which is a dirt road and is smooth. This road goes straight north for half a mile out of Hubbard, then turns west, and proceeds about 40 rods when it turns north again. There is a gradual rise in the road west. Where the road turns north there is a rounding corner. After rounding the curve proceeding north, the road is level or flat for a distrance estimated by witnesses as being from the length of a car to 50 or 60 feet from the brow of the hill. The road slopes down to the north. There are trees and shrubs east of the curve where the road turns north, west thereof, and on the east side of the road that slopes to the north.

The defendant, after he proceeded upgrade to turn north, was traveling at a rate of speed of 20 miles an hour. His wife was seated to his right, and to her right was seated their daughter. His car was on the right side of the center of the road. As the defendant pro-

ceeded around the corner the lights of his car would show across the road to the west bank and upward. The defendant testified it would be necessary to round the curve at the top of the hill before the lights would shine down the hill to the north on the right side of the road. The defendant saw no object or man standing or lying down as he made the turn to the north, but in so doing he felt a "bump" such as if running over something. After he hit the bump in the road he drove 20 feet and came to a stop. His wife asked him what it was. He did not know of any object that might have come in contact with his car. He drove down to the bottom of the hill and turned around and came back. On his return he saw a man's body lying in the road. He drove to the west side a distance of about 4 feet from the body and got out of his car. He had a flashlight with him and flashed it on the body. The feet were approximately one foot from the east grade of the road, and the head was to the west. All of the body was east of the center line of the road. The body was lying on its right side facing south. The defendant then drove toward Hubbard and had gone approximately a half mile when he met Grove and stopped him. Grove was on the road north of Hubbard near a bridge at that time. The defendant told Grove he had run over somebody, and asked Grove to go back to Hubbard and call the sheriff, which he did.

The sheriff arrived at the scene of the accident about 1 a. m. The defendant and his wife were there. The defendant's car was parked to the north on the west side of the road. The sheriff parked well over to the west side of the road, south of and close to the body, and he could see the body in the lights of his car. He had a conversation with the defendant. The defendant said he struck something in the road, and the further he proceeded down the road the more he thought it was peculiar. He went to the bottom of the hill and turned and went back to see what it was.

The defendant testified that the body was from 2 to 4 feet north, over the top of the hill 15 or 20 feet past the curve, lying on the north side of the slope. The witness Grove testified that the body was lying 30 feet from the corner of the road going north after you get to the brow of the hill. The sheriff testified the body was lying 50 to 60 feet north of the top of the hill, and the plaintiff's son placed the body 40 or 50 feet from the curve.

The sheriff testified that as you proceed around the corner north, your lights shine against the road to the west bank and upwards. There are trees and brush at the corner of the road, and it would be difficult to see through the trees at the corner of the road at night.

The witness Bill Hogan had been to the fair at Homer. He met the defendant standing in the road where the body was lying. He stopped his car 10 to 15 feet south of the body, and could see the body by the lights of his car. He did not get out of his car. The defendant said he had hit someone. Hogan flashed a light on the body and identified it as the body of Raymond Heeney. He could not tell what part of the body had been run over. He had seen the body before the defendant flagged him down with a flashlight. He came up the right side of the road as you go around the corner, and he testified that his lights picked up the parked car of the defendant which was 15 feet north of the body on the right side of the road.

The sheriff testified to finding some tracks along the side of the road south of the body at an approximate distance of 15 to 20 feet. These tracks led in the direction of the body. The sheriff did not notice anything to indicate that the body had been dragged or rolled.

The plaintiff's son testified that his father was dressed in blue overalls, and wore a light blue work shirt and a cap.

The plaintiff and the deceased lived northwest of Hub-

bard. On August 21, 1947, the deceased and his wife were in Hubbard. They intended to return home together. The plaintiff waited for their daughter, a school girl, who was attending the fair at Homer. Upon her return to Hubbard the mother and daughter left for home in the family car. The deceased had often walked home or caught a ride, and did not go with them. He was apparently on his way home when the accident occurred.

Raymond Heeney, deceased's son, had talked to his father the morning of August 21, 1947, just before leaving for Omaha. He returned to Hubbard at about 10 p. m. He saw his father about 10:30, and talked to him again. On Wednesday after his father was killed he talked to the defendant at the defendant's home. He asked the defendant if he could tell how the accident happened. Defendant said he was "coming along about 15 to 20 miles an hour and he felt something hit the car." He had hauled grain over that road that day and knew there were no bumps there that he could hit, so when he felt the bump he went to the bottom of the hill, turned around, and went back and found the deceased lying in the road.

The defendant made tests to determine how much he could see from his car. Sitting in his car looking over the front end of it he would have to look 16 feet to pick up an object approximately 8 inches off the ground, indicating that there was a distance of 16 feet in front of the car where he could not see the road. Likewise a test was made looking to the right-hand side with reference to an object lying in the road directly in front of the car. There was a distance of 23 feet from the object in the road back toward the car that you could see nothing in the road, that is, an object 8 or 10 inches high.

Before discussing the plaintiff's assignments of error we note the following upon which the trial court properly instructed the jury: The duties of a pedestrian using a public highway and the operator of a motor ve-

hicle using the same are reciprocal. A pedestrian, though he has a legal right to walk on the highway, is also required to use reasonable care for his own safety. The driver of a motor vehicle using the highway in the exercise of his legal rights is required to exercise due care for the safety of others who might reasonably be-expected to be on the highway. Such driver is likewise required to anticipate that pedestrians may be using the highway and to use due care and protect any such who may be using it. See, Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N. W. 2d 114; Floyd v. Edwards, 150 Neb. 41, 33 N. W. 2d 555.

The plaintiff contends the trial court erred in failing to adequately instruct the jury as to the duties of the defendant to observe the rules of the road so as to operate his motor vehicle in such manner that he could stop the same within the area lighted by the lights of his automobile and avoid striking the deceased who was lawfully using the highway. In support of this contention the plaintiff relies on the cases of Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572, 58 A. L. R. 1473; Cotten v. Stolley, 124 Neb. 855, 248 N. W. 384; Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439.

In Roth v. Blomquist, *supra,* this court held: "As a general rule it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps." In the opinion, it is said: "When applicable to the facts a violation is of itself negligence precluding a recovery * * *." The rule with recognized exceptions has been followed since it was first announced. See, Fulcher v. Ike, 142 Neb. 418, 6 N. W. 2d 610, and cases cited there-in p. 423; Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106; Pierson v. Jensen, 148 Neb. 849, 29 N. W. 2d 625.

In Fulcher v. Ike, *supra,* this court said: "It would appear, therefore, that the general rule with exceptions, which provides that it is negligence as a matter of law

for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by the lamps on the automobile, should embrace in the exceptions all situations where reasonable minds may differ on the question of whether or not the operator of the automobile exercised the care, caution and prudence required of a reasonably careful, cautious and prudent person under the circumstances of the particular situation."

The facts in the instant case disclose that the defendant was driving his car upgrade west at a speed of 20 miles an hour and did not increase his speed when he turned north on the highway to proceed downgrade. In making the turn north there is a flat surface estimated in length as from the length of a car to 50 or 60 feet. Along the north side of the road going west are trees, brush, and bushes, and also at the turn to the north, and on the east side of the highway where the road slopes downward to the north. The deceased was wearing blue overalls, a light blue work shirt, and a cap. The defendant did not see the deceased until after he felt a bump, turned around, came back, and saw the body lying on the highway. The evidence does not disclose whether the defendant was walking along the highway or was lying down at the time the defendant felt a bump as if his car has struck some object. The body was lying over the crest of the hill. There is a variance in the testimony as to just what distance north of the top of the hill the body was lying, as heretofore set out in the evidence.

It is contended by the plaintiff that the defendant drove at an excessive rate of speed and that he was unable to stop within the range of his vision. There is no evidence to sustain this conclusion in the record. The maximum rate of speed of defendant's car was 20 miles an hour ascending the upgrade, and it was not increased. This certainly was not excessive speed, but a reasonable rate of speed under the circumstances. The rule that it is negligence to drive a car so fast that you

cannot stop it within the distance you can see is based on the reckless speed that such a situation implies. The rule contended for, although correct, has no application to the facts before us. The negligence of the defendant, if any, must be predicated on some other theory.

The question of whether the defendant should have seen the deceased, and the inferences to be drawn from the evidence adduced are matters of evidence which a jury must decide. The only question properly determinable was whether the defendant was negligent in failing to see the deceased in time to avoid the accident. See Johnson v. Anoka-Butte Lumber Co., *supra.* The trial court instructed the jury with reference to whether or not the defendant, in rounding the turn, made use of his sense of seeing, and was exercising that degree of care that persons of ordinary prudence would ordinarily exercise under the circumstances. The issue was presented to the jury as to whether or not the defendant was keeping a proper lookout and had his automobile under control under the circumstances.

In Floyd v. Edwards, *supra,* a case wherein a pedestrian dressed in dark clothing was walking along the highway at night and was struck by an automobile approaching from the rear, the plaintiff's petition alleged facts in accordance with the rule set forth in Roth v. Blomquist, *supra.* The plaintiff also offered and requested instructions in accordance with the rule, which the trial court refused. This court held that the defendant was not negligent as a matter of law, that the case was brought within the exceptions of the rule, and therefore the court was required to submit the issues on the driver's alleged negligence, if any, to the jury for its determination.

In the light of the evidence and foregoing cited authorities, we conclude the defendant was not guilty of negligence as a matter of law, and the case was brought within the exceptions to the rule which require submission of the issue of the driver's alleged negligence to

the jury. The plaintiff's contention cannot be sustained.

The plaintiff assigns as error the failure of the court to instruct the jury under the rule that where there are no eyewitnesses and no direct evidence of the accident causing the injury, the facts and circumstances may be proved by circumstantial evidence, and the presumption is raised by the instinct of self-preservation on behalf of the deceased that he was not guilty of contributory negligence, but was in the exercise of due care and caution for his own safety, unless the contrary is shown.

The presumption of due care arising out of the natural instinct of self-preservation is not evidence, but a mere rule of law, and obtains only in the absence of direct or circumstantial evidence justifying reasonable inferences one way or another upon that subject. When such evidence is produced the presumption disappears and is not entitled to be considered. Eggeling v. Chicago, R. I. & P. Ry. Co., 119 Neb. 229, 228 N. W. 361. See, also, Anderson v. Nincehelser, 152 Neb. 857, 43 N. W. 2d 182, on rehearing, 153 Neb. 329, 44 N. W. 2d 518. The trial court did not commit prejudicial error as contended for by the plaintiff.

We have examined the plaintiff's other assignments of error and conclude they are without merit.

For the reasons given in this opinion, the judgment entered on the verdict is affirmed.

AFFIRMED.

CHAPPELL, J., concurring.

I find no fault with propositions of law appearing in the opinion and agree with the result, but believe that disposition of the last assignment of error could have been predicated upon another ground.

In this case the trial court evidently concluded either that defendant had not affirmatively pleaded contributory negligence of plaintiff's decedent, or that there was no evidence to ultimately support such issue if properly pleaded. Therefore, no instruction was given by the trial court upon the question of contributory negligence.

In that situation plaintiff had the benefit of the failure to submit such issue and cannot complain. The only issue submitted was the alleged negligence of defendant and whether or not it proximately caused the accident and resulting death.

It appears logical to say that in such a case there can be no necessity of giving an instruction that it was presumed that plaintiff's decedent was not guilty of negligence in order to avoid prejudicial error, because whether or not he was negligent was never an issue submitted to the jury. Thus, the failure to give such presumptive instruction could not be prejudicial error because it had no place in the issues as ultimately submitted.

WENKE, J., joins in this concurring opinion.