ANN GERMAN, TEMPORARY GUARDIAN FOR ELIZABETH D. PITTMAN, APPELLANT AND CROSS-APPELLEE, V. KEITH SWANSON, APPELLEE AND CROSS-APPELLANT.

553 N.W.2d 724

Filed July 26, 1996.  No. S-94-521.

John F. Thomas and Aaron A. Clark, of McGrath, North, Mullin & Kratz, P.C., for appellant.

Terry K. Gutierrez, of Schmid, Mooney & Frederick, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

This is an appeal from a jury verdict in a personal injury action. Ann German, temporary guardian for Elizabeth D. Pittman, alleged at trial that Keith Swanson was negligent in striking Pittman, a pedestrian, with his automobile. The jury returned a verdict for Swanson. German appeals and Swanson cross-appeals, each claiming that the trial court should have directed a verdict in his or her favor. We affirm.

Pittman was struck by Swanson's vehicle on the afternoon of January 24, 1991, as she crossed Farnam Street in the middle of the block between Turner Boulevard and 30th Street in Omaha. At that location, Farnam Street is a westbound one-way street with four lanes of traffic and one parking lane. The sky was clear and the streets were dry on that afternoon. Pittman was wearing a white coat and rust-colored shoes. She was walking to a convenience store located across the street from the Twin Towers apartment building where she resided. She was not in a crosswalk.

In her deposition, which was read at trial in lieu of her live testimony, Pittman testified that she looked for traffic to a distance of two blocks away before she began crossing. Specifically, Pittman stated, "I looked down there and saw no cars, but I wanted to get out of the way before some did come." From that point, she looked straight ahead as she crossed and did not look again in the direction of traffic until the moment she was struck by Swanson's car.

Swanson stated at trial that he did not see Pittman until she was in the lane immediately to the right of Swanson's vehicle. He testified that he did not recall why he failed to see Pittman step from the curb and walk across three lanes of traffic before she stepped in front of his vehicle. Swanson further testified that he did not brake when a car beside him braked, because he had not seen Pittman at that time. Swanson stated that he could not recall whether there was a car to his right blocking his vision in such a way as to keep him from seeing Pittman in time to stop. In a portion of his deposition, which was read at trial, Swanson stated that he had a clear field of vision ahead of him as he traveled down Farnam Street; he did not see Pittman step from the curb and begin crossing because he "wasn't really concerned looking at the very far right lane."

The car beside Swanson was an unmarked police cruiser driven by Sgt. Glenn Steimer of the Omaha Police Division. Steimer watched Pittman step from the curb and walk across Farnam Street. He applied his brakes to slow down when he reached a point about 30 yards from Pittman's path. While he was braking, Steimer saw Swanson's vehicle, which was traveling in the lane to the left of Steimer, continue forward and pass Steimer's vehicle. Steimer saw Pittman look up when Swanson's vehicle was about 5 feet from her, then watched as Swanson hit his brakes and struck Pittman. Steimer did not see Pittman look for westbound traffic before that moment. Steimer stated that Pittman did not suddenly jump out into his lane of traffic and that she had been in plain view on Farnam Street for "however long it takes for her to step from the curb and walk across three lanes of traffic."

After the close of all evidence, each party moved for a directed verdict; the trial court overruled both motions and

submitted to the jury the issues of Swanson's negligence and Pittman's contributory negligence. The jury returned a verdict in favor of Swanson.

German assigns as error the failure of the trial court to direct a verdict on liability against Swanson. On cross-appeal, Swanson assigns error to the failure of the trial court to direct a verdict against German by finding Pittman contributorily negligent as a matter of law.

When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *Hoeft v. Five Points Bank*, 248 Neb. 772, 539 N.W.2d 637 (1995). Where a party has sustained the burden and expense of trial and has succeeded in securing a verdict on the facts in issue, that party has the right to keep the benefit of the verdict unless there is prejudicial error in the proceedings by which it was secured. *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993).

Under the "range of vision" rule, a motorist is deemed negligent as a matter of law if he or she operates a motor vehicle in such a manner as to be unable to stop or turn aside without colliding with an object in the motorist's path within his or her range of vision. *Nickell v. Russell*, 247 Neb. 112, 525 N.W.2d 203 (1995). Therefore, German argues that she was entitled to a directed verdict because Pittman was walking within Swanson's range of vision at the moment that Swanson struck Pittman. However, German misconstrues the range of vision rule. As its name suggests, the range of vision rule applies when the motorist either should have seen or saw the person or object and failed to stop in time to avoid collision. See *id*. We have recognized an exception to the range of vision rule when the person or object is not discernible, precluding the motorist from seeing the person or object in time to stop. See, *id*.; *Edgerton v. Lawry*, 235 Neb. 100, 453 N.W.2d 743 (1990). Reasonable minds could have properly concluded from the evidence that Steimer's vehicle obstructed Swanson's view, resulting in Swanson's not having sufficient time to avoid

striking Pittman. Thus, the range of vision rule would not apply to the facts of this case.

When a pedestrian crosses a street between intersections without looking at all, or looks straight ahead without glancing to either side, or is in a position where he or she cannot see and proceeds regardless of that fact, the situation ordinarily presents a question of fact for the court. See *Gerhardt v. McChesney*, 210 Neb. 351, 314 N.W.2d 258 (1982). Where a pedestrian looks but does not see an approaching automobile, or sees it and misjudges its speed or distance from him, or for some other reason concludes that he could avoid injury to himself, a jury question is usually presented. *Id*. The jury was instructed on contributory negligence and was given the opportunity to render its verdict in light of that instruction and in light of the evidence presented. The jury returned a verdict in favor of Swanson.

A jury verdict will not be set aside unless clearly wrong; it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996). The jury's verdict in this case is supported by the evidence, which indicated that Pittman failed to look for traffic again after she stepped from the curb and proceeded across Farnam Street and that Swanson's view of her may have been blocked by Steimer's vehicle. Accordingly, we affirm the decision of the lower court.

AFFIRMED.

WHITE, C.J., dissenting.

In finding that a pedestrian bears alone the burden for her safety while crossing the street, even if she is clearly visible to motorists, the majority transforms the "range of vision" rule into a "fair game" rule. While Pittman undoubtedly was contributorily negligent, she is entitled to a fair consideration of the degree of her negligence without the presence of non-issues clouding the jury's judgment.

Under the range of vision rule, a motorist is deemed negligent as a matter of law if he or she operates a motor vehicle in such a manner as to be unable to stop or turn aside without colliding with an object in the motorist's path within his

or her range of vision. *Nickell v. Russell*, 247 Neb. 112, 525 N.W.2d 203 (1995). We have found exceptions to the range of vision rule where the motorist could not have seen the struck object or person. An exception to the range of vision rule exists when a motorist, otherwise exercising reasonable care, does not see an object sufficiently in advance to avoid a collision because the object is relatively indiscernible because its color is similar to the surface of the street or highway, and it is thereby indistinguishable from the surface. See *id*. The applicability of this exception turns on the objective visibility of the object, rather than on the reasonableness (or unreasonableness) of the motorist's conduct. See *Bartosh v. Schlautman*, 181 Neb. 130, 147 N.W.2d 492 (1966).

We have often found this exception applicable or declined to apply the range of vision rule at all for collisions occurring at night, because the motorist's range of vision is necessarily truncated. Where the object struck in such collisions is human, the greater onus is on the pedestrian to look out for his or her own safety at night. In *Hrabik v. Gottsch*, 198 Neb. 86, 251 N.W.2d 672 (1977), we affirmed an order sustaining a motion to dismiss in favor of a motorist in a nighttime collision that occurred when a pedestrian was crossing an unlit roadway, where the evidence was uncontroverted that the pedestrian had not looked for vehicles before stepping into the path of the motorist. Similarly, in *Hennings v. Schufeldt*, 222 Neb. 416, 384 N.W.2d 274 (1986), we affirmed an order directing a verdict for a motorcyclist who had struck an elderly pedestrian on a dark and rainy night, where it was clear that the pedestrian had failed to keep any sort of a lookout for his safety. See, also, *Heeney v. Churchill*, 154 Neb. 848, 50 N.W.2d 72 (1951) (rejecting range of vision rule on grounds that motorist could not have seen pedestrian, where pedestrian wore dark clothing and collision occurred at night).

This exception does not apply in this case. Swanson was driving in daylight and clear weather, and Pittman was not wearing clothing that would camouflage her against the road surface. Pittman did not suddenly dart out from between parked cars, but, rather, walked across several lanes of traffic before Swanson struck her in the lane farthest from her depar-

ture point. Swanson did not indicate that his range of vision was truncated or blocked by any obstruction. Although Swanson's trial counsel argues that Steimer's vehicle must have blocked Swanson's view of the street, Swanson himself remembers no obstructions to his vision at all. Although Swanson stated that his normal practice when driving is to scan the road in front of him, he also stated that he does not know why he failed to see Pittman before he struck her.

Whether Pittman should not have been in Swanson's lane of traffic at that time simply is not germane to the range of vision rule. The range of vision rule does not ask whether the driver actually saw an object before colliding with it; such an interpretation negates the rule altogether, allowing any motorist to escape liability as a matter of law merely by stating that he or she did not see the unfortunate object. Rather, the range of vision rule asks only whether the driver *could* have seen an object in time to avoid colliding with it. See *Prime Inc. v. Younglove Constr. Co.*, 227 Neb. 423, 418 N.W.2d 539 (1988). As the record contains no evidence at all that Swanson could not have seen Pittman in time to stop or swerve away, the only reasonable conclusion is that Swanson was negligent as a matter of law. The majority should have found that German deserved a directed verdict on the issue of Swanson's negligence.

The majority states that no error resulted from the failure of the trial court to direct a verdict on liability, because Pittman was contributorily negligent. This assertion overlooks the fact that the jury was instructed to consider not only whether Pittman was so negligent as to preclude recovery, but also whether the questions of duty, breach, causation, and harm were proved as to Swanson's negligence in the first place. The jury returned a general verdict and did not answer any special interrogatories as to whether its verdict turned on a failure to find negligence or on a finding of gross contributory negligence. Nor did the verdict form ask whether, if the jury found Pittman contributorily negligent, such contributory negligence was slight or gross. If the jury's verdict turned on a finding that Swanson was not negligent—that is, a finding

contrary to the range of vision rule of law—then prejudice did indeed result from the failure to direct a verdict.

A party's right to a fair trial may be substantially impaired by jury instructions that contain inconsistencies or confuse or mislead the jury. *Hamernick v. Essex Dodge Ltd.*, 247 Neb. 392, 527 N.W.2d 196 (1995). Thus, a trial court must eliminate all matters not in dispute and submit to the jury only the controverted questions of fact upon which the verdict must depend. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994). It is more than mere probability that an instruction on a matter not an issue in the litigation distracts a jury in its effort to answer legitimate, factual questions raised during trial. *Id.* Submission of an issue on which the evidence is insufficient to sustain an affirmative finding is generally prejudicial and results in a new trial. *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994); *Vredeveld v. Clark*, 244 Neb. 46, 504 N.W.2d 292 (1993).

Under a proper reading of the range of vision rule, Swanson's negligence was not a jury issue. The trial court should not have allowed it to interfere with the jury's consideration of the real issues in this case. I cannot assent to the majority's acceptance of this error.

LANPHIER, J., joins in this dissent.